MASON TENDERS DISTRICT COUNCIL WELFARE FUND, Pension Fund, Annuity Fund, Mason Tenders Training Fund, New York State Laborers–Employers Cooperation and Education Trust Fund, New York Laborers' Health and Safety Trust Fund and Building Contractors Association and Industry Advancement Program, and John J. Virga, in his fiduciary capacity as Director,

and

Anthony Silveri, as Business Manager of the Mason Tenders District Council of Greater New York, Plaintiffs,

v.

M & M CONTRACTING & CONSULTING, M & M Consulting & Contracting, Inc. d/b/a M & M Contracting & Consulting, and Michael T. Moscato, Jr., Defendants.

No. 98 CIV 5056 RLC.

United States District Court, S.D. New York.

Jan. 13, 2000.

Gorlick, Kravitz & Listhaus, P.C., New York, Allyson L. Belovin, Lawrence A. Kravitz, of counsel, for Plaintiffs.

Hollander, Strauss & Mastropietro, LLP, New York, Michael R. Strauss, of counsel, for Defendants.

## *OPINION*

ROBERT L. CARTER, District Judge.

## BACKGROUND

Mason Tenders District Council Welfare Fund, Pension Fund, and Annuity Fund; Mason Tenders Training Fund; New York State Laborers—Employers Cooperation and Education Trust Fund; New York Laborers' Health and Safety Trust Fund (collectively "plaintiff Funds"); Building Contractors' Association Industry Advancement Program; John J. Virga, Director of the plaintiff Funds; and Anthony Silveri, Business Manager of the Mason Tenders District Council of Greater New York ("Union") brought the instant action, pursuant to §§ 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3) & 1145, and § 301 of the Labor Management Act of 1947, 29 U.S.C. § 185 ("the Taft Hartley Act"), for equitable and injunctive relief under ERISA, and for breach of contract. Plaintiffs brought suit to compel the defendants to perform their statutory and contractual obligation to pay monetary contributions and/or make reports to the plaintiff Funds, and to compel the defendants to remit dues checkoffs and New York La-

borers' Political Action Committee contributions ("NYLPAC contributions") that were deducted from the wages of employees, as per written employee authorizations directing said payments to the Union.

The Defendants: M & M Contracting & Consulting and M & M Consulting & Contracting, Inc., d/b/a M & M Contracting & Consulting ("defendant company" collectively) are for-profit organizations that are doing business in the City and State of New York. The organizations are also "employers," as defined by §§ 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) & 1145. Defendants also are "employers in an industry affecting commerce," as defined by § 301 of the Taft–Hartley Act, 29 U.S.C. § 185. Michael T. Moscato, Jr., president of the company, has authority over the payment of the required contributions and over the submission of the required reports to the plaintiff Funds; he also exercises authority over payments, deductions, and remittances of dues checkoffs and NYLPAC contributions to the Union. As such, Moscato also is an employer within the meaning of §§ 3(5) and 515 of ERISA, and is an employer within the meaning of § 301 of the Taft–Hartley Act, 29 U.S.C. § 185. *See* Aff. of Lawrence Kravitz, Esq. in Opp. to Motion[1] ("Kravitz Aff.").

On April 24, 1998, the defendant company was notified that it had failed to remit dues checkoffs and NYLPAC contributions to the Union for the period between June 25, 1997, through November 30, 1997; immediate payment of all delinquencies was demanded. Ex. A, Kravitz Aff. On May 12, 1998, the defendant company was notified that it had failed to remit dues checkoffs owed to the Union for the period between June 25, 1997, through November 30, 1997. Full and immediate payment of all dues checkoffs was demanded. Ex. B, Kravitz Aff. On June 4, 1998, the defendant company was notified that it had failed to pay contractually-due fringe benefit contributions owed to the plaintiff Funds for the period between June 25, 1997, and November 30, 1997. Immediate payment of all fringe benefits contribu-

---

**1.** This refers to the Affidavit of Lawrence Kravitz, Ex. in Opposition to Defendants' Motion to Va- cate Default Judgment.

tions was demanded. Ex. C, Kravitz Aff. The defendant company did not respond to these notices and demands, and did not cure the delinquencies. Plaintiffs therefore instituted the instant action in this court on July 16, 1998. Kravitz Aff. at 8.

On July 21, 1998, Timothy M. Botti, a licensed process server, served the defendant company with the summons and complaint of this action at the company's place of business: 159 Mallory Avenue, Jersey City, New Jersey. Ex. D, Kravitz Aff. Botti also served a copy of the summons and complaint on Moscato by personally delivering the documents to Tom Rey, a man who identified himself to the process server as an agent authorized by appointment to receive service at that address. Ex. E, Kravitz Aff. On July 22, 1998, Botti served another copy of the summons and complaint on Moscato by first class mail; the documents were addressed to Michael T. Moscato, Jr., 159 Mallory Avenue, Jersey City, New Jersey, and were placed in a postpaid envelope marked personal and confidential. *Id.* Proof of service was filed with the court on July 29, 1998. Kravitz Aff. at 8.

Moscato and the defendant company did not file an answer to the complaint and on August 21, 1998, the plaintiffs moved for an order granting judgment against the defendants by default. *Id.* Plaintiffs mailed copies of their motion for default to defendants at 159 Mallory Avenue, Jersey City, New Jersey. Ex. F, Kravitz Aff. No papers in opposition to the motion were filed and on September 23, 1998, a default judgment was entered which required defendants to pay the plaintiff Funds $ 37,656.76. The payment provided by the default judgment covered the amounts the defendant company owed in delinquency to the plaintiff Funds, statutory damages, interest, costs and attorneys' fees; it also included a $2,825.10 payment to the plaintiff Union for the amount in delinquency to the Union and for interest. Ex. G, Kravitz Aff.

On September 23, 1999, defendants moved to vacate the default judgment pursuant to

Rules 60(b)(1) and (6), F.R. Civ. P., as to all defendants, claiming that their inaction constituted excusable neglect and that they had a meritorious defense. Defendants also moved pursuant to Rule 60(b)(4), F.R. Civ. P., to vacate the default judgment as to Moscato, on the ground that the judgment was void because the court issuing the judgment lacked personal jurisdiction over Moscato. Aff. of Michael Strauss, Esq. in Support of Motion.[2]

In support of their motion to vacate the default judgment, defendants assert that Moscato delivered the summons and complaint in this action to defendants' former counsel, Kimberly Hintze, Esq., and was informed that Hintze would file a timely answer and defend the action on the merits. However, Hintze failed to file an answer, and default judgment was entered against defendants. Defendants claimed that they only learned of the events leading to the default judgment in June, 1999. Defendants further contend that the plaintiffs are not entitled to the fringe benefit contributions and dues payments they claim they are owed because the defendants paid these monies to another union for defendants' employees who were members of that union. Aff. of Moscato, Jr.

## DETERMINATION

### I.

Rule 55(c), F.R. Civ. P., provides that a default judgment may be set aside under Rule 60(b), F.R. Civ. P. on several grounds: under Rule 60(b)(1), for "mistake, inadvertence, surprise or excusable neglect," under Rule 60(b)(4), when "the judgment is void," and under Rule 60(b)(6) for "any other reason justifying relief from the operation of the judgment."

■ The court determines whether a default judgment should be set aside pursuant to Rules 60(b)(1) and (6), by assessing whether (1) the defendant's default was willful; (2) whether the defendant has a meritorious defense; and (3) the level of prejudice that the

---

**2.** This refers to the Affidavit of Michael Strauss, Esq. in Support of Motion to Vacate Default Judgment.

non-defaulting party may suffer as a result of the default being set aside. *See Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir. 1993). Even aside from these considerations, judgments by default are not favored as strong public policy considerations counsel that courts should, when possible, resolve disputes on the merits rather than on technical pleading deficiencies. *See id.* Nonetheless, "courts have an interest in expediting litigation [and] abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct." *Am. Alliance Ins. Co. Ltd. v. Eagle Ins. Co.,* 92 F.3d 57, 61 (2d Cir.1996).

 The "excusable neglect" standard is construed generously. *Id.* at 58. In order to determine whether it applies, the court must ascertain whether defendant's behavior leading to the default can be characterized as willful. *See Salomon v. 1498 Third Realty Corp.,* 148 F.R.D. 127, 129 (E.D.N.Y.1993). Ultimately, however, the decision as to whether a default judgment should stand is committed to the sound discretion of the district court, as that court is in the best position to weigh the facts of the case and assess the defendant's conduct. *See Davis v. Musler,* 713 F.2d 907, 912 (2d Cir.1983).

 Defendants claim that their conduct amounts to excusable neglect under Rule 60(b)(1), F.R. Civ. P., because their sole error was failing to timely recognize that their counsel negligently failed to file an answer in this action. However, in most circumstances, under the Rule 60(b) "a client is not . . . excused from the consequences of his attorney's nonfeasance or negligence." *See, e.g., Sasso v. M. Fine Lumber Co., Inc.,* 144 F.R.D. 185, 189 (E.D.N.Y.1992) (declining to extend relief to a client under Rule 60(b)(1) merely because his attorney provided erroneous advice); *Nemaizer v. Baker,* 793 F.2d 58, 62 (2d Cir.1986) (declining to extend Rule 60(b)(1) relief to a client for counsel's error in judgment); *Dominguez v. United States,* 583 F.2d 615, 618 (2d Cir.1978) (declining to offer a client relief under Rule 60(b)(1) when his counsel failed to appear at a court hearing).

3. This refers to the Affidavit of Anthony Silveri in Opposition to Motion to Vacate Default Judg-

 Given the longstanding rule that proof of an attorney's negligence or malfeasance does not establish excusable neglect, defendants' assertions about their counsel's negligence fail to constitute excusable neglect within the meaning of Rule 60(b)(1). Moscato alleges that when he received the summons and complaint in July, 1998, he gave the documents to defendants' counsel and he believed that an answer had been filed. However, defendants had ample opportunity to learn that the answer had not been filed.

The summons and complaint were mailed in July, 1998, to defendants' Mallory address, (Ex. D, Kravitz Aff.) and defendants do not claim that these documents did not arrive at their place of business. Second, plaintiffs mailed a copy of their notice ·of motion for entry of default judgment to defendants at the defendants' place of business on August 21, 1998. (Ex. F, Kravitz Aff.) Even if the court accepts defendants' contention that they first learned of the default judgment in June, 1999, there is no showing that defendants made any inquiry of counsel about the status of the case between July, 1998, and June, 1999. Moreover, after learning of the default judgment in June, 1999, defendants did not initiate this proceeding to vacate the default judgment until September 23, 1999. These facts compel the court's finding that defendants' default was both willful and fatally dilatory.

Defendants' claim of a meritorious defense similarly fails to survive serious scrutiny. Article VI, Section 3 of the collective bargaining agreement provides that all interior demolition workers may authorize a dues checkoff and the monies deducted from their checks will be paid over to the Union. (Ex. A, Aff. of Anthony Silveri in Opp. to Motion, at 15.)[3] Additionally, Article VI, Sections 4 through 9 of the agreement provide for wage benefit contributions to the various plaintiff Funds; (Section 4, Welfare Fund; Section 5, Pension Fund; Section 6, Annuity Fund; Section 7, Training Fund; Section 8, New York State Laborers'—Employers' Coopera-

ment.

tion and Education Trust Fund; Section 9, Health and Safety Trust Fund) on behalf of interior demolition workers, and Section 10 of the agreement provides for NYLPAC contributions from the wages of employees who authorize same to be paid over to the Union. *Id.* at 15–18. The agreement is signed by M & M Contracting & Consulting, Michael T. Moscato, Jr., President, 159 Mallory Ave., Jersey City, New Jersey. (*Id.* at 41.) The agreement also provides for specific welfare, pension and annuity fund contributions on behalf of eligible Union employees, but this is in addition to the contributions required for interior demolition-workers. *Id.*, sections 4(b), 5(b), 6(b) at 16–17.

Defendants' claim that they made contributions on behalf of members of another union does not suffice to meet their obligation to make contributions to the plaintiff Funds and the Union on behalf of interior demolition workers, no matter what their union affiliation. Under the collective bargaining agreement defendants are clearly obligated to make contributions to the plaintiff Funds and makes dues checkoff payments to the Union. To vacate the default judgment and allow the defendants to litigate the issue here would merely prolong the inevitable with nothing gained, and would waste time and resources.

Because the court has concluded that defendants have failed to establish that their failure to respond to the complaint constituted excusable neglect or that they have a meritorious defense against the claims in the default judgment, the court denies their motion, pursuant to Rule 60(b)(1) & (6), F.R. Civ. P., to vacate the default judgment.

## II.

■ Moscato argues that the default judgment entered against him is void pursuant to Rule 60(b)(4), F.R. Civ. P., because he was not served personally with the documents in this action and, therefore, the court lacks personal jurisdiction over him. Service of process in federal actions is governed by Rule 4(e)(1), F.R. Civ. P., which provides that a party may serve an individual in any judicial district of the United States pursuant to the law of the forum state.

N.Y.C.P.L.R § 308 provides that personal service may be made on a natural person within the State of New York by delivering the summons to a person of suitable age and discretion at the actual place of business of the person to be served, and by mailing the summons via first class mail in an envelope marked personal and confidential to the person to be served at his actual place of business. The delivery and mailing of the summons and complaint must be effected within twenty days of each other. *Id.*

Additionally, as Moscato is a non-domiciliary of New York and was served out of state, the court can exercise personal jurisdiction over him if he satisfies the transacting business test allowing for long arm jurisdiction under N.Y.C.P.L.R. § 302. Specifically, section 302(a)(1) provides that personal jurisdiction may be had over a non-domiciliary "who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services within the state . . . [when] the cause of action is related to the transaction or contract." *Falik v. Smith,* 884 F.Supp. 862, 866 (S.D.N.Y.1995) (Carter, J.) (discussing N.Y.C.P.L.R. § 302(a)(1)).

Moscato meets both categories for service on a non-domiciliary under N.Y.C.P.L.R. § 302(a)(1). For one, the company he works for performs work in New York City. Second, he as company representative, is required to make contributions to the various plaintiff Funds, which maintain offices at 32 West 18th Street, New York, New York, and the plaintiff Funds are suing Moscato because of his actions regarding these contributions. Since the evidence establishes that the court may exercise personal jurisdiction over Moscato pursuant to the transacting business test under § 302(a)(1), the next consideration is whether he was properly served in compliance with N.Y.C.P.L.R. § 308.

The plaintiff's process server's affidavit indicates that the summons was delivered on July 21, 1998, to Tomas Rey, a man the process server describes as "a white male, approximately 52 years of age;" the process server further attests that Rey was found at 159 Mallory Avenue in Jersey City, New Jersey, the location which is Moscato's actual

place of business. (Botti Aff. at 1.)[4] Also, plaintiffs provided evidence that on July 22, 1998, the summons was mailed to Moscato, first class, in an envelope marked personal and confidential. *Id.* Given these facts, it is clear that all of the requirements under N.Y.C.P.L.R. § 308 for effecting service on Moscato were met.

The court's conclusion that Moscato was served in accordance with N.Y.C.P.L.R. §§ 302 and 308 establishes that the court issuing the default judgment had personal jurisdiction over him, and therefore defendants' motion to vacate the default judgment under Rule 60(b)(4), F.R. Civ. P. must fail.

### III.

Section 502(g)(2) of ERISA, 29 U.S.C § 1132(g)(2)(D) provides for an award of reasonable attorneys' fees and costs incurred in the collection of unpaid fringe benefit contributions. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 269–71, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *San Pedro Fishermen's Welfare Trust Fund Local 33 v. DiBernardo,* 664 F.2d 1344, 1346 (9th Cir.1982). Plaintiffs should submit an application for their reasonable attorneys' fees and costs with supporting documentation.

**IT IS SO ORDERED.**

---

4. This refers to the *Affidavit of Timothy M. Botti,* Exhibit E, *Kravitz Aff.*