FEDERAL TRADE COMMISSION, Plaintiff,

v.

1263523 ONTARIO, INC. d/b/a Consumer Credit Services, an Ontario Corporation, Donald M. Davies, Lloyd Charles Prudenza, and David Seymour Wells, Defendants.

No. 99 Civ.8670(LTS)(MHD).

United States District Court, S.D. New York.

May 31, 2002.

Debra A. Valentine, General Counsel, Barbara Anthony, Regional Director, Northeast Region, Carole A. Paynter, Rhonda J. McLean, Michael Joel Bloom, Federal Trade Commission, New York City, for plaintiff.

*MEMORANDUM OPINION AND ORDER*

SWAIN, District Judge.

Plaintiff, the Federal Trade Commission ("FTC"), in this action brought pursuant to Sections 13(b) and 19(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, charges defendants 1263523 Ontario, Inc. d/b/a Consumer Credit Services ("Consumer Credit"), an Ontario corporation, Donald M. Davies, Lloyd Charles Prudenza, and David Seymour Wells ("Defendants") with violations of Section 5 of the FTC Act, 15 U.S.C. Section 45, and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.1 et seq., promulgated pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act 15 U.S.C. §§ 6101 *et seq.*, alleging deceptive marketing of advance fee credit cards. Before the Court is Plaintiff's motion for a default judgment against Defendants, including permanent injunctive relief and consumer redress.

The Court has considered thoroughly all submissions related to this motion. For the following reasons, Plaintiff's motion is granted, and damages and costs are awarded to the extent set forth below.

According to the complaint, defendant Donald M. Davies is the President of defendant Consumer Credit. Defendant Lloyd Charles Prudenza is the Secretary/Treasurer of Consumer Credit. Defendant David Seymour Wells is a director of Consumer Credit. All three defendants represented Consumer Credit in dealings with Electronic Financial Group, a Texas entity that processes preauthorized debits of consumers' checking accounts for defendant Consumer Credit. *See* Declaration of Jerry Federico, Ex. B to Pl.'s Mot. for Default Judgment.

On August, 5, 1999, Plaintiff filed a complaint, seeking a permanent injunction and other equitable relief against Defendants. On August 8, 1999, Plaintiff filed an application for a Temporary Restraining Order ("TRO") to halt immediately the Defendants' allegedly deceptive marketing of credit cards. The FTC Act authorizes service on a defendant in an FTC enforcement action "wherever [the defendant] may be found." 15 U.S.C.A. § 53(b) (West 1997). Service of process is to be accomplished by personal service, by leaving a copy of the process at the residence or principal office or place of business of the defendant, or by mailing a copy of the process by registered or certified mail to the defendant's residence, principal office or principal place of business address. 15 U.S.C.A. § 53(c) (West 1997). The record indicates that, on or about August 25, 1999, there was an unsuccessful attempt to serve Defendants with the summons and complaint filed in this action. Plaintiff proffered evidence that it made several attempts to effect personal service on the Defendants, all of whom resided in Canada, through the efforts of the Royal Canadian Mounted Police ("RCMP"). *See* Aff.

of Ralph Reginald King, attached to Judge Martin's Order dated August 19, 1999. The RCMP attempted to effect personal service upon the Defendants at their last known residences, however, Defendants evaded service and personal service was not effectuated. *Id.* On August 31, 1999, the Court granted Plaintiff's application for a preliminary injunction and issued an order permitting substituted service at the Defendants' last known residences by first class mail. In accordance with that Order, on or about September 21, 1999, the Defendants were served with a copy of the summons and the complaint. *See* Clerk's Cert. dated May 9, 2000. The record indicates that, since being served with these documents, Defendants have failed to answer or defend themselves in this action. On May 5, 2000, the Clerk of the Court entered an Order of Default against Defendants. *See* Clerk's Cert., dated May 9, 2000, Ex. A to Declaration of Carole A. Paynter.

This Court has jurisdiction of the subject matter of this case and jurisdiction over the parties pursuant to the FTC Act, 15 U.S.C. Section 53, which empowers this Court to grant injunctive and other equitable relief to prevent and remedy violations of any provision of law enforced by the FTC and authorizes service in an action brought by the FTC wherever the defendant "may be found." 15 U.S.C.A. § 53(b) (West 1997); *see.* Judge Martin's Ex Parte Temporary Restraining Order ¶ 1. Pursuant to Rule 55 of the Federal Rules of Civil Procedure, this Court may, when a default has been entered against a party, enter a judgment by default upon application by the Plaintiff. *See FTC v. Alliance Communication*, No. 96 Civ. 0568(DLC), 1996 WL 812939, at *1 (S.D.N.Y. Nov.6, 1996).

"[T]he core function of service is to supply notice of the pendency of a legal action, in a matter and a time that afford the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. United States,* 517 U.S. 654, 672, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996), *quoted in Citadel Management, Inc. v. Telesis Trust, Inc.,* 123 F.Supp.2d 133, 145 (S.D.N.Y.2000). An entry of default judgment should be made only where there was willful default, such that the failure to answer was more than mere negligence or carelessness. *See SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998).

In deciding a motion for default judgment, the Court considers the following three factors: 1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *See Mason Tenders District Council v. M & M Contracting & Consulting,* 193 F.R.D. 112, 114–15 (S.D.N.Y.2000). Dispositions of motions for default judgments are left to the sound discretion of the district court. *See Shah v. New York State Dep't of Civil Service,* 168 F.3d 610, 615 (2d Cir.1999). Entry of default constitutes an admission of all well-pleaded allegations of the complaint by the defaulted party, except those relating to damages. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

In light of all the circumstances previously outlined, the Court finds that denial of this motion would be unfairly prejudicial to Plaintiff. Defendants, having failed to respond in any way to the summons and complaint or the instant motion, or otherwise to make any appearance in this action and having failed to provide any explanation for their failure to defend, have defaulted willfully. Since Defendants

have failed to proffer any defense and are therefore deemed to have admitted the well-pleaded allegations of the complaint, other than those as to the amount of damage (Fed.R.Civ.P.8(d)), the second factor—whether Defendant has a meritorious defense—is not at issue. Thus, all of the facts alleged in Plaintiff's complaint are, as a matter of law, deemed admitted by Defendants, including the specific allegations of misrepresentations set forth in Count One and Three of the complaint, the Telemarketing Sales Rules ("TSR") violation detailed in Count Two of the Complaint, the material omissions alleged in Count Four of the Complaint, and the allegations that the individual defendants each formulated, directed, controlled or participated in the acts and practices of defendants' consumer credit services. (Compl.¶¶ 6–8).

█ Plaintiff seeks a permanent injunction. The FTC Act provides that "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction." 15 U.S.C. § 53(b). Violation of Section 5 of the FTC Act, 15 U.S.C. Section 45, constitutes a "proper" case for the imposition of a permanent injunction. *See FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir.1988); *FTC v. The Crescent Publishing Group*, 129 F.Supp.2d 311, 320–21 (S.D.N.Y.2001); *FTC v. Alliance Communication Inc.*, 1996 WL 812939, at *1. Misrepresentations of material facts made to induce the purchase of goods or services constitute unfair or deceptive acts or practices and are prohibited by Section 5(a) of the FTC Act. *See FTC v. The Crescent Publishing Group*, 129 F.Supp.2d at 321. Plaintiff has submitted the declarations of 18 U.S. consumers, each of whom paid the Defendants $159 per credit card based on the Defendants' representations that issuance of the cards was guaranteed. *See* Exhibits to Pl.'s Ex Parte Motion for a TRO. The victims have not received the guaranteed credit cards or refunds that Defendants represented they would be able to receive. Thus, Plaintiff has presented clear, uncontroverted evidence that Defendants violated the FTC Act by making material misrepresentations about the product they were marketing and selling to consumers. *See* Exhibits to Pl.'s Ex Parte Motion for a TRO.

The evidence proffered also demonstrates that Defendants further violated the FTC Act by infringing upon a number of the TSR's provisions. The TSR prohibits telemarketers and sellers from, *inter alia*, requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person. 16 C.F.R. § 310.4(a)(4) (2002). The TSR also prohibits telemarketers and sellers from misrepresenting any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer and from misrepresenting any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies. 16 C.F.R. § 310.3(a)(2)(iii)–(iv) (2002). The TSR further requires sellers and telemarketers to disclose, in a clear and conspicuous manner, before a customer pays for goods or services offered, all material restrictions, limitations or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer, 16 C.F.R. § 310.3(a)(1)(ii) (2002), and requires sellers and telemarketers to disclose, in a clear and conspicuous manner, before a customer pays for goods or services offered, a statement of all material terms and conditions of their refund, cancellation, exchange, or repurchase policy, if the seller

or telemarketer makes a representation about such policy, 16 C.F.R. § 310.3(a)(1)(iii) (2002). Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. Section 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. Section 57a(d)(3), violations of the TSR constitute unfair or deceptive acts or practices in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. Section 45(a). Through their fraudulent marketing scheme, Defendants violated the TSR and the FTC Act.

■ Considering the fact that preliminary injunctive relief has already been ordered against the Defendants in this cause, the Court now determines, under the circumstances of this case, that a permanent injunction is necessary and appropriate to protect consumers. This is an appropriate remedy even though Plaintiff acknowledges, on information and belief, that the Defendants are no longer engaging in the deceptive marketing scheme. *See* Mem. in Supp. of Pl.'s Mot. for Entry of Default Judgment against Defs. at 9. "It is settled that an action for an injunction does not become moot merely because the conduct complained of was terminated, if there is a possibility of recurrence, since otherwise the defendants 'would be free to return to' (their) old ways." *Allee v. Medrano*, 416 U.S. 802, 811, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974). *See also Fedders v. FTC*, 529 F.2d 1398, 1403 (2d Cir.1976), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976) ("The fact that [defendant] may have discontinued the offending practice before the commission issued the complaint ... does not bar a cease-and-desist order, where the public interest otherwise requires it.") As Defendants have defaulted and failed to show that there is no possibility that the alleged offending conduct will recur, the fact that Defendants have ceased the behavior that prompted

this action does not preclude issuance of an injunction to protect the public against a recurrence of the behavior. Given Defendants' engagement in fraudulent, deceptive trade practices, the failure of prior enforcement efforts in requiring lawful activity and stopping unlawful activity, and the likelihood of future violation, there is a cognizable danger that, in the absence of an injunction enjoining Defendants, they will continue to violate the law. Thus, a permanent injunction is necessary to protect the public from further violations of the FTC Act.

[9] Plaintiff has also requested that the Court order judgement for consumer redress to the victims of Defendants' misrepresentations. The amount of damages for which Defendants are liable must be established by proof before the Court. *See Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974). Under the FTC Act, the Court has the power to "grant such relief as the court finds necessary to redress injury to consumers" resulting from deceptive acts or practices. 15 U.S.C. § 57b(b); *see FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir.1993). Plaintiff "need[s] not prove that every consumer actually relied upon the misrepresentations to prevail." *FTC v. Five–Star Auto Club, Inc.* 97 F.Supp.2d 502, 530 (S.D.N.Y.2000). The central issue is whether the seller's misrepresentations tainted the customer's purchasing decisions. *FTC v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir. 1991). "A presumption of actual reliance arises once the [FTC] has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product." *FTC v. Figgie Int'l, Inc.*, 994 F.2d at 605–06.

■ Plaintiff's evidence supports a presumption that the fraudulent statements induced customers to pay for the

credit cards. Plaintiff has presented evidence that the Defendants induced customers to pay an advance fee for a credit card through the misrepresentations made in the course of the sale. *See* Exhibits to Pl.'s Ex Parte Motion for a TRO. The FTC has presented evidence of numerous complaints by victims who never received a credit card from Defendants after paying the fee: 190 by victims who complained to law enforcement authorities and an additional 140 by victims who complained to First Consumers National Bank, one of the bank's referenced in Defendants' booklet. *See* Paynter Decl., ¶ 4; Hasson Decl., ¶ 3, Exs. A and B. Moreover, FTC has proffered the declaration of Jerry Federico, president of Electronic Financial Group, the Texas firm that processed electronic debits for the Defendants. *See* Declaration of Jerry Federico, Ex. B to Pl.'s Mot. for Default Judgment ¶ 4. Jerry Federico testifies that Defendants have been Electronic Financial Group's clients since November 1997 and that he has been in contact with defendants David Seymour Wells, Lloyd Charles Prudenza and Donald M. Davies regarding daily preauthorized transfers of funds from consumers. *Id.* According to Jerry Federico, as of July 1999 Electronic Financial Group had "processed 71,942 preauthorized transfers or a total of $10 million (US) on behalf [of defendant] Consumer Credit Services." *Id.* Defendants, by defaulting, have failed to rebut the presumption of actual reliance on the misrepresentation.

■ Fraud in the selling of the product entitles consumers to full refunds. *See FTC v. Figgie Int'l, Inc.,* 994 F.2d at 606. Here, no consumer received a credit card or a refund from the Defendants. Damages are evaluated by the amount of gross sales that resulted from such sale. *McGregor v. Chierico,* 206 F.3d 1378, 1388–89 (11th Cir.2000). Defendants

therefore are liable for the full amount of actual consumer loss, here the gross amount of advance fees paid to Defendants. *Id.; see also FTC v. Five-Star Auto Club, Inc.,* 97 F.Supp.2d at 534; *FTC v. Verity Int'l, Ltd.,* 194 F.Supp.2d 270, 286 (S.D.N.Y.2002). The FTC has proffered sufficient, uncontroverted evidence that Defendants collected $10 million in fees from consumers.

Judgement shall therefore be entered against all Defendants, jointly and severally, in the amount of $10,000,000 and a permanent injunction issued, all substantially as set forth in Plaintiff's Proposed Judgment for Permanent Injunction and Consumer Redress.

SO ORDERED.

### ORDER OF PERMANENT INJUNCTION AND CONSUMER REDRESS

Plaintiff, the Federal Trade Commission (the "Commission"), has filed its complaint pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, charging Defendants 1263523 ONTARIO, INC. d/b/a Consumer Credit Services, an Ontario Corporation, Donald M. Davies, Lloyd Charles Prudenza, and David Seymour Wells, with violations of Section 5 of the FTC Act, 15 U.S.C. § 45, and the TSR, 16 C.F.R. Part 310.1 et seq., promulgated pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 *et seq.* Defendants have been served with the summons and complaint and have failed to appear in this action. On May 9, 2000, this Court entered a default against the defendants for failing to plead or otherwise defend this action.

Now, upon the application of Plaintiff Federal Trade Commission and upon the declaration of Carole A. Paynter, attorney

for Plaintiff, showing that the Defendants are indebted to the Plaintiff in the sum of $10,000,000, that the Defendants have defaulted for failure to appear, and that the Defendants are not infants or incompetent persons and are not in the military service of the United States, it is hereby **ORDERED, ADJUDGED, AND DECREED as follows:**

1. This Court has jurisdiction over the subject matter of this case and of the parties hereto and venue is proper in this Court. The complaint states a claim upon which relief may be granted against defendant under Sections 13(b) and 19(a) of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 *et seq.*

2. Defendants have engaged in acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Telemarketing Sales Rule, 16 C.F.R. § 310.2, making entry of this order in the public interest.

### DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1. "Material" means likely to affect a person's choice of, or conduct regarding, goods or services.

2. "Defendants" means corporate defendant 1263523 Ontario, Inc. d/b/a Consumer Credit Services, Donald M. Davies, Lloyd Charles Prudenza, and David Seymour Wells and each of them, their successors, assigns, officers, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device.

3. "Plaintiff" means the Federal Trade Commission.

4. "Telemarketing," "telemarketer," "seller," and "material" are as defined in Section 310.2 of the Telemarketing Sales Rule, 16 C.F.R. § 310.2.

5. "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a) and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which the information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

6. "Assets" means all real and personal property of the corporate defendant, or held for the benefit of the corporate defendant, including but not limited to "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory,", "checks," or "notes," (as these terms are defined in the Uniform Commercial Code), lines of credit, and all cash, wherever located.

## I. PROHIBITED BUSINESS ACTIVITIES

**IT IS THEREFORE ORDERED** that, in connection with telemarketing, the Defendants are hereby permanently restrained and enjoined from:

A. Misrepresenting, either orally or in writing, any material fact, including but not limited to the following:

1. That consumers will receive a credit card, such as a Visa or MasterCard, in return for the payment of a one-time fee;

2. Any aspect of the terms and conditions related to any refund policy.

B. Requesting or receiving payment of any fee or consideration in advance of obtaining or arranging an extension of credit when they have guaranteed or represented a high likelihood of success in obtaining or arranging an extension of credit.

C. Failing to disclose, in a clear and conspicuous manner, *before* the consumer sends any funds to defendants or divulges to defendants credit card or bank account information, the total costs to purchase, receive, or use, any goods or services that are offered, offered for sale, or sold by defendants, and all material restrictions, limitations or conditions on receiving an extension of credit, including but not limited to the following, that:

1. credit cards will be issued only if the applications of the consumers meet a lender's minimum credit-granting criteria.; and

2. refunds of the application fee will only be made conditioned upon consumers providing defendants with letters of rejection from three banks.

G. Using, for any purpose whatsoever, any alias(es) or assumed name(s) that are different from their legal names, or using, for any purpose whatsoever, unincorporated businesses or entities.

H. Violating or assisting others in violating any provision of the Commission's Telemarketing Sales Rule, 16 C.F.R. Part 310.1 et seq. (as amended from time to time).

## II. MONETARY RELIEF

**IT IS FURTHER ORDERED** that judgment is hereby entered against Defendants in the amount of TEN MILLION DOLLARS ($10,000,000), which amount shall be immediately due and payable upon entry of this Order. Any and all funds received from Defendants may be used to provide consumer redress and pay attendant administrative expenses. If the Commission determines, in its sole and full discretion, that redress is wholly or partially impracticable, any funds not so used shall be deposited into the United States Treasury.

## III. PERFORMANCE BOND

**IT IS FURTHER ORDERED** that Defendants Davies, Prudenza, and Wells are permanently restrained and enjoined from engaging or participating, whether directly or indirectly, in concert with others, or through any business entity or other device, in the promotion, advertising, marketing, offering to extend or extension of a line of credit, unless and until each first obtains a performance bond for each such business entity or activity in the principal sum of TEN MILLION DOLLARS ($10,-000,000).

A. This bond shall be conditioned upon compliance with Section 5 of the FTC Act, 15 U.S.C. § 45 and the Telemarketing Sales Rule, 16 C.F.R. § 310.1 et seq., and with the provisions of this Order. The bond shall be deemed continuous and remain in full force and effect as long as each such Defendant continues to engage or participate in, whether directly or indirectly, in concert with others, or through any business entity or other device, the pro-

motion, advertisement, marketing, or offering to extend lines of credit or the extension of lines of credit and for at least three (3) years after each has ceased to engage in such activity. The bond shall cite this Order as the subject matter of the bond, and shall provide surety thereunder against financial loss resulting from whole or partial failure of performance due, in whole or in part, to any violation of Section 5 of the FTC Act, 15 U.S.C. § 45, the Telemarketing Sales Rule, or the provisions of this Order.

B. The performance bond required pursuant to this Paragraph shall be an insurance agreement providing surety for financial loss issued by a surety company that is admitted to do business in each of the states in which such Defendant does business and that holds a Federal Certificate of Authority as Acceptable Surety on Federal Bond and Reinsuring. The performance bond shall be in favor of both: (1) the Federal Trade Commission for the benefit of any consumer injured as a result of any false or misleading representation of material fact made by such Defendant, his agents or any other persons acting in concert with him or under his authority, supervision, or control, while engaged in the promotion, advertisement, marketing, or offering to extend a line of credit or extending a line of credit and (2) any consumer so injured.

C. The performance bond required pursuant to this Paragraph is in addition to, and not in lieu of, any other bond required by any other federal, state, or local law, or by any other court order not entered in this action. The bond requirement exemption in this Paragraph shall not be construed to limit or preempt the regulatory powers of any other federal, state, local, or other government agency.

D. At least ten (10) days before the commencement of any activity for which the bond is required by this Paragraph, such Defendant shall provide a copy of the bond to the Director of the Northeast Region of the Federal Trade Commission at the address specified in Paragraph VIIID of this Order.

E. No Defendant shall disclose the existence of the performance bond required by this Paragraph to any consumer, or applicant for any line of credit, without disclosing clearly and prominently, at the same time: "AS REQUIRED BY ORDER OF THE U.S. DISTRICT COURT IN SETTLEMENT OF CHARGES OF FALSE AND MISLEADING REPRESENTATIONS MADE IN THE PROMOTION AND OFFER OF EXTENSIONS OF CREDIT TO CONSUMERS."

F. The Commission may execute against the performance bond if it demonstrates to this Court by a preponderance of the evidence that, after the effective date of this Order, any business in which such Defendant holds an ownership interest, shares, or stock, or in which he serves as an officer, director, or trustee, made any false or misleading representation of material fact, expressly or by implication, in connection with the promotion, advertisement, marketing, offer to extend or the extension of credit.

G. Proceedings instituted under this Paragraph are in addition to, and not in lieu of, any other civil or

criminal remedies as may be provided by law, including any other proceedings the Commission may initiate to enforce this Order.

## IV. ASSETS HELD BY THIRD PARTIES

IT IS FURTHER ORDERED that any financial or brokerage institution, business entity, or person, including but not limited to ELECTRONIC FINANCIAL GROUP, 4800 W. Waco Drive, Waco, Texas 76710–7018, that holds, controls, or maintains custody of any account or asset of the corporate defendant, or has held, controlled, or maintained custody of any account or asset of the corporate defendant at any time since June 1, 1997, shall transfer all such assets to the Plaintiff by electronic fund transfer in accordance with the instructions provided by the Plaintiff Federal Trade Commission to effectuate such transfer, within ten (10) business days of receiving a copy of this Order.

## V. CUSTOMER LISTS

IT IS FURTHER ORDERED that Defendants are hereby permanently restrained and enjoined from selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, credit card number, bank account number, e-mail address, Social Security Number, or other identifying information of any person who paid any money to the Defendants, at any time prior to the date this Order is entered, in connection with their offer to obtain a guaranteed credit card as referenced in the complaint. *Provided, however,* that Defendants may disclose such identifying information to a law enforcement agency or as required by any law, regulation, or court order.

## VI. DISTRIBUTION OF THE ORDER

IT IS FURTHER ORDERED that each defendant shall immediately provide a copy of this Order to each of its parent companies, holding companies, divisions, subsidiaries, corporations, affiliates, successors, assigns, directors, officers, managing agents, employees, representatives, and independent contractors, and shall, within three (3) business days from the date of service of this Order, provide the Commission with a sworn statement that defendants have complied with this provision of the Order and provide the Commission with a list of all business entities and individuals that were provided a copy of this Order.

## VII. RECORD KEEPING PROVISIONS

IT IS FURTHER ORDERED that, for a period of five (5) years from the date of entry of this Order, Defendants and those in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, in connection with any business where: (1) Defendants Davies, Prudenza, or Wells is the owner of the business or directly or indirectly manages or controls the business, and (2) the business is engaged in the promotion, advertisement, marketing, offer to extend or the extension of credit to consumers, or assisting others engaged in such activities, are hereby restrained and enjoined from failing to create, and from failing to retain for a period of three (3) years following the date of such creation, unless otherwise specified:

A. Books, records, and accounts that, in reasonable detail, accurately and fairly reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B. Records accurately reflecting: the name, address, and telephone number of each person employed in any

capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable. Any business subject to this Paragraph shall retain such records for any terminated employee for a period of two (2) years following the date of termination;

C. Records containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, for all consumers to whom such business has sold, invoiced, or shipped any goods or services;

D. Records that reflect, for every consumer complaint or refund request, whether received directly, indirectly, or through any third party:

 i. the consumer's name, address, telephone number, and the dollar amount paid by the consumer;

 ii. the written complaint or refund request, if any, and the date of the complaint or refund request;

 iii. the basis of the complaint, including the name of any salesperson complained against, and the nature and result of any investigation conducted concerning any complaint;

 iv. each response and the date of the response;

 v. any final resolution and the date of the resolution; and

 vi. in the event of a denial of a refund request, the reason for the denial.

E. Copies of all sales scripts, training materials, advertisements, or other marketing materials utilized; *provided that* copies of all sales scripts, training materials, advertisements, or other marketing materials utilized shall be retained for three (3) years after the last date of dissemination of any such materials.

## VIII. COMPLIANCE REPORTING BY DEFENDANT

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A. For a period of five (5) years from the date of entry of this Order, Defendants Davies, Prudenza, and Wells shall notify the Commission of the following:

 1. Any changes in any Defendant's residence, mailing addresses, and telephone numbers, within ten (10) days of the date of such change;

 2. Any changes in any Defendant's employment status (including self-employment) within ten (10) days of such change. Such notice shall include the name and address of each business that such Defendant is affiliated with or employed by, a statement of the nature of the business, and a statement of such Defendant's duties and responsibilities in connection with the business or employment; and

 3. Any proposed change in the structure of any business entity owned or controlled by any Defendant, such as creation, incorporation, dissolution, assignment, sale, merger, creation or dissolution of subsidiaries, proposed filing of a bankruptcy petition, change in the corporate name or address, or any other change that may affect compliance obligations arising out of this Order, thirty (30) days prior to the effective date of any proposed change; *provided, however,* that with respect

to any proposed change in the corporation about which such Defendant learns less than thirty (30) days prior to the date such action is to take place, Defendant shall notify the Commission as soon as is practicable after learning of such proposed change.

B. One hundred eighty (180) days after the date of entry of this Order, each individual Defendant shall provide a written report to the Commission, sworn to under penalty of perjury, setting forth in detail the manner and form in which the Defendant has complied and is complying with this Order. This report shall include, but not be limited to:

1. Defendant's then current residence or mailing address and telephone number;

2. Defendant's then current employer, business addresses and telephone numbers, a description of the business activities of each such employer, and such Defendant's title and responsibilities for each employer;

3. A copy of each acknowledgment of receipt of this Order obtained by Defendant pursuant to Paragraph VIII;

4. A statement describing the manner in which Defendant has complied and is complying with Paragraphs I through IV of this Order; and

5. A statement indicating whether any performance bond has been obtained by the individual Defendant pursuant to Paragraph III of the Order, and attaching a copy of any such bond.

C. Upon written request by a representative of the Commission, each individual Defendant shall submit additional written reports (under oath, if requested) and produce documents on fifteen (15) days notice with respect to any conduct subject to this Order.

D. For the purposes of this Order, each individual Defendant shall, unless otherwise directed by the Commission's authorized representatives, mail all written notifications to the Commission to:

Regional Director
Northeast Region
Federal Trade Commission
One Bowling Green, Suite 318
New York, N.Y. 10004
Re: FTC v. 123635 Ontario Inc.,
Civil Action No. 99–CV–8697 (LTS)

E. For the purposes of this Paragraph, "employment" includes the performance of services as an employee, consultant, or independent contractor; and "employers" includes any individual or entity for whom any Defendant performs services as an employee, consultant, or independent contractor;

F. For purposes of the compliance reporting required by this Paragraph, the Commission is authorized to communicate directly with any and all Defendants.

## IX. COMMISSION'S AUTHORITY TO MONITOR COMPLIANCE

**IT IS FURTHER ORDERED** that the Commission is authorized to monitor the Defendant's compliance with this Order, without further leave of the Court, by all lawful means, including but not limited to the following:

A. To obtain discovery from any person in the manner provided by Chapter V of the Federal Rules of Civil Procedure, Fed.R.Civ.P. 26–37, including the use of compulsory process pursuant to Fed.R.Civ.P. 45, for the purpose of monitoring and investigating any Defendant's

compliance with any provision of this Order;

B. To use representatives posing as consumers and as suppliers to any Defendant, any Defendant's employees, or any other entity managed or controlled in whole or in part by any Defendant, without the necessity of identification or prior notice; and

C. Nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b–1, to investigate whether the Defendant has violated any provision of this Order or Section 5 of the FTC Act, 15 U.S.C. § 45 and the Telemarketing Sales Rule, 16 C.F.R. § 310.

## X. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of enforcement of this Order.