**Sherry SPEAKS, plaintiff,**

v.

**Edward DONATO D/B/A Consignment Sales et. al., defendants.**

**No. 3:01CV1049 (JBA).**

United States District Court, D. Connecticut.

March 31, 2003.

Michael W. Kennedy, Kennedy & Kennedy LLC, Bernard T. Kennedy, Branford, CT, for plaintiff.

Elisabeth Ann Seieroe Maurer, Ridgefield, CT, for defendants.

**RULING ON DEFENDANT DONATO'S MOTION TO SET ASIDE JUDGMENT OR, IN THE ALTERNATIVE, TO SET ASIDE DEFAULT [DOC. # 25]**

ARTERTON, District Judge.

Defendant Edward Donato ("Donato") moves under Fed.R.Civ.P. 60(b)(1), (3), and (6) to set aside the default judgment entered in favor of plaintiff Sherry Speaks ("Speaks") in the amount of $9,783.16, or, in the alternative, under Fed.R.Civ.P. 55(c) to set aside the corresponding prior entry of default. For the reasons set forth below, Donato's motion is DENIED as to setting aside the entry of default, but, pursuant to Fed.R.Civ.P. 60(b)(1), GRANTED to permit defendant to present evidence of reimbursement as set off to $2,511.16 of the default judgment awarded as actual damages on Speaks' claim under the federal Truth in Lending Act ("TILA")

and actual or "statutory" damages on her claims under the Connecticut Uniform Commercial Code ("CUCC") and the Connecticut Unfair Trade Practices Act ("CUTPA"). While the default judgment will be partially set aside, the remaining award ($7,272.16) remains undisturbed for the reasons that follow.

## I. Factual Background [1]

Speaks commenced the present action on June 7, 2001, alleging that, in connection with her purchase of a used 1992 Ford automobile, Donato violated TILA, CUCC, and CUTPA.[2] Donato was properly served in hand with a copy of the summons and complaint, both of which he admits receiving. Donato contacted attorney Mark G. Ouellette ("Ouellette"), who agreed to represent Donato against Speaks, and presumably forwarded a copy of the complaint to Ouellette.[3] Ouellette never filed an appearance on behalf of Donato.[4]

Ouellette subsequently contacted Michael Kennedy ("Kennedy"), one of Speaks' attorneys of record,[5] seeking to discuss resolution of the case. According to Ouellette, he spoke with Kennedy on several occasions regarding the allegations of Speaks' complaint and po-

tential settlement, and Kennedy "indicated to [him] that he would not advance the pleadings while [they] were discussing settlement." Ouellette Aff. ¶. 7. Ouellette does not further specify the substance of his conversations with Kennedy or provide any details with respect to the timing of the discussions.[6] Kennedy, by contrast, maintains that he received only one call from Ouellette and that, when Ouellette attempted to discuss Speaks' claims and settlement, Kennedy refused, informing Ouellette that he would not discuss settlement until Ouellette filed an appearance in the case on behalf of Donato.

On July 30, 2001, Speaks filed a request for the clerk to enter default against Donato under Fed.R.Civ.P. 55(a) for failure to appear or answer the complaint. Donato received the request for entry of default and "reported" the pleading to Ouellette.[7] The clerk of court granted the entry of default on August 1, 2001.

On August 15, 2001, Speaks filed a motion for default judgment under Fed.R.Civ.P. 55(b) on the grounds that defendant had failed to appear and file an answer to the complaint, and a corresponding motion for a

1. Unless otherwise noted, the facts are taken from the record of the case or Donato's submissions in accordance with the direction of the Second Circuit that, in the context of a motion to vacate a default judgment, "all doubts [are to be resolved] in favor of the party seeking relief." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir.2001).

2. Atlantic Coast Capital, Inc. ("ACCI") was a co-defendant in the lawsuit but is not involved in the present dispute.

3. The presumption is based on Donato's affidavit, which states in reference to the summons and complaint that he "reported" it to Ouellette, and Ouellette's affidavit, which states that he subsequently discussed the allegations of the complaint with opposing counsel.

4. Donato, although nominally pro se, never filed an appearance or otherwise contacted the Court, no doubt believing that Ouellette would protect his interests.

5. On May 21, 2002, attorney Bernard Kennedy also appeared on behalf of Speaks.

6. The Court notes that Donato (through counsel) submitted Ouellette's affidavit twice, once as the

sole exhibit to the memorandum supporting the present motion and also as one of three exhibits appended to his response to plaintiff's opposition. Following plaintiff's query why Donato and his current attorney of record had not submitted affidavits in the first instance, as well noting the lack of detail in Ouellette's affidavit, affidavits from Donato and the attorney were included with Donato's response but the Ouellette affidavit was resubmitted unchanged.

7. Donato maintains that, other than the summons and complaint and the request for default, he neither received any other pleadings from opposing counsel or notices from the court related to the case. The Court notes that the summons and complaint were served in hand and the request for entry of default was certified to Donato (and/or Consignment Sales) at 299 Meridian Road, Waterbury, Connecticut. Although two subsequent documents, Speaks' motion for default judgment and motion for hearing in damages, were certified to Consignment Sales at 277 Danbury Road, New Milford, Connecticut, the remaining pleadings relevant to the present motion, including the motion for damages, attorney fees, and costs and all supporting affidavits and memoranda submitted in connection with the hearing in damages were certified to Donato at 299 Meridian Road, Waterbury, Connecticut.

hearing in damages. On September 19, 2001, absent any appearance, motion to set aside the default, or any other pleading from Donato, this Court granted Speaks' motion for default judgment as to liability only, granted Speaks' corresponding motion for a hearing in damages, and referred the case to Magistrate Judge Joan G. Margolis for a hearing in damages.

On December 20, 2001, this Court approved and adopted Magistrate Margolis' recommended ruling and ordered that judgment be entered in favor of Speaks in the amount of $9,783.16.[8] The damages were awarded as follows: on Speaks' TILA claim, $4,522 in attorney fees, $2,500 in statutory damages (representing roughly twice the finance charge on the 1992 Ford), actual damages of $439 (representing $64 for DMV registration and $375 for gap insurance), and filing and sheriff fees of $250; on Speaks' CUCC claim, actual damages of $1,072.16 (representing $621.16 for brake repairs and $451 for rental cars); and on Speaks' CUTPA claim, "statutory" damages of $1,000. See Rec. Rul. [Doc. # 15].

After learning of the default judgment entered in favor of Speaks, Donato contacted attorney Elisabeth Seieroe Maurer ("Maurer") in December of 2001, who agreed to represent him. On January 15, 2002, Maurer spoke with Bernard Kennedy regarding settlement. According to Maurer,

> I offered to settle [the case] for one thousand dollars. Attorney Kennedy told me that he would speak with his client and get back to me. I discussed with him my concerns about how the default judgment had been entered against Mr. Donato while his son and Attorney Ouellette had an agreement not to pursue the matter. [Bernard Kennedy] did not deny that chain of events nor did he tell me that he could not speak to me until I had filed an appearance.

Maurer Aff. ¶. 3a.

On January 21, 2002, not having received a response, Maurer wrote "Attorney Kennedy,"[9] again offering $1,000 in settlement of the case. Maurer received no response, and, after telephoning Kennedy's office again on February 8, 2002, wrote another letter to him. Maurer followed up with two more telephone calls, one on February 13, 2002, and one on March 3, 2002. As to the calls of February 8 and 13, and March 3, Maurer reports that, on one occasion, she "spoke with another Attorney Kennedy who was female," who, according to Maurer, "told [her] that neither of the other two were available and that I would hear from them shortly." Maurer Aff. ¶. 3f. Speaks' opposition states that "Attorney Jayne Kennedy" received a telephone call from Maurer on February 13, 2002, "pertaining to [Maurer's] settlement offer." Opp'n at 3. Maurer alleges she has, to date, received no response with regard to settlement.

On May 16, 2002, Maurer filed an appearance on behalf of Donato, and her motion to set aside the default judgment (or, in the alternative, to set aside the entry of default)

8. The Court notes that, due to apparent miscommunication, although directed to do so, the Clerk never officially entered the judgment on damages. In addition, the Court now recognizes that the bifurcated procedure of entering judgment as to liability and subsequently judgment as to damages was technically improper. See Fed.R.Civ.P. 55(b)(2); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 97 (2d Cir.1993) ("This order was improper because a default judgment cannot be entered until the amount of damages has been ascertained."). Thus, had Donato objected to the entry of default after September 19, 2001 (the date on which default judgment was entered as to liability) but before December 20, 2001 (the date on which default judgment was ordered), the standard of review for the present motion arguably would have been the lower standard applicable to motions to set aside an entry of default. See id. at 96–97. In this case, however, the technically incorrect procedure did not prejudice Donato as he failed to move to vacate the default (or otherwise contact the Court) until May 16, 2002. Further, where entry of judgment was explicitly ordered in the Court's rulings, Donato is not entitled to the lower standard merely because the ministerial act of entering the damages judgment did not take place. Finally, the Court notes that, even if the lower standard were applicable to Donato's motion, the Court would reach the same result for the reasons stated in the opinion and that, for purposes of clarity, the Court refers throughout to judgment having been entered.

9. It is not always clear whether Maurer's affidavit refers to Bernard Kennedy or Michael Kennedy when using the term "Attorney Kennedy."

with supporting memorandum of law. Speak's opposition followed on May 21, 2002, and Donato's reply on June 4, 2002.

## II. Discussion

### A. Fed.R.Civ.P. 60(b)(1)

#### 1. Standard

 Fed.R.Civ.P. 55(c) provides that "for good cause shown" the Court may set aside an entry of default made pursuant to Fed.R.Civ.P. 55(a) and, if a judgment by default has been entered, may set the judgment aside in accordance with Fed.R.Civ.P. 60(b). Fed.R.Civ.P. 60(b)(1) in turn provides,

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . .

Evaluation of the excusable neglect standard of Fed.R.Civ.P. 60(b)(1) is generally instructed by the Supreme Court's decision in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).[10] However, special jurisprudence has blossomed in the context of a motion under Fed.R.Civ.P. 60(b)(1) to set aside a default judgment entered under Fed. R.Civ.P. 55(b), requiring "excusable neglect [ ] to be construed generously," *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 58 (2d Cir.1996), by evaluation of three criteria: " '(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted.' " *Id.* at 59 (*quoting Davis v. Musler*, 713 F.2d 907, 915 (2d Cir.1983)). No one factor is determinative, but each is to be weighed and balanced with the others. *See id.* at 62. Finally, although the factors are to be applied more rigorously in the case of a default judgment (as opposed to an entry of default) because "the concepts of finality and litigation repose are more deeply implicated in [a default judgment]," *Enron Oil*, 10 F.3d at 96, in light of the "strong public policy favor[ing] resolving disputes on the merits," *American Alliance*, 92 F.3d at 61, "all doubts [are to be resolved] in favor of the party seeking relief [from the default judgment]," *Pecarsky*, 249 F.3d at 172.

#### 2. Willfulness

 In the Second Circuit, willfulness does not include careless or negligent errors. *See American Alliance*, 92 F.3d at 60. Further, because

> the degree of negligence in precipitating a default is a relevant factor to be considered, along with the availability of a meritorious defense and the existence of prejudice, in determining whether a default judgment should be vacated . . . ., [g]ross negligence can weigh against the party seeking relief from a default judgment, though it does not necessarily preclude relief.

*Id.* In giving content to this standard, the Second Circuit has held that the misfiling of a complaint by an in-house counsel's clerk resulting in subsequent passivity towards court notices and ultimately failure to answer a complaint constituted gross negligence "weigh[ing] somewhat against granting relief." *Id.*

On this record, the Court concludes that both Ouellette and Maurer seriously mishandled their client and litigation responsibilities.[11] Although Ouellette was expressly re-

---

**10.** For discussion of the effect of *Pioneer* on pre–1993 case law from the Second Circuit, see *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 249–51 (2d Cir.1997) (per curiam) and *U.S. v. Hooper*, 9 F.3d 257 (2d Cir.1993).

**11.** The more lenient standard applicable to pro se litigants, *see Enron Oil*, 10 F.3d at 96 ("[A]s a general rule a district court should grant a default judgment sparingly and grant leave to set aside the entry of default freely when the defaulting party is appearing *pro se*."), does not apply to Donato because he never filed a pro se appear-

ance. Moreover, the affidavits of Donato, Ouellette and Maurer (and corresponding memoranda of law) clarify that throughout the entirety of this litigation, Donato was advised or represented by counsel. In evaluating willfulness, the Court focuses first on the conduct of Ouellette and Maurer and whether it should be imputed to Donato. Furthermore, even if Donato's conduct were reviewed under the more lenient pro se standard, his own admissions (that, other than reporting receipt of Speaks' complaint and the request for default to Ouellette, he took no other

tained for the purpose of defending Donato, he never filed an appearance, which would have insured he received copies of all pleadings and orders. Ouellette claims that he was hoodwinked by opposing counsel into "not checking the docket concerning the matter." *Id.* at 71. The district court docket can be easily checked via the internet, such that an attorney has no reason or need to rely exclusively on the representations of his adversary, even if such reliance satisfied an attorney's professional responsibilities. Ouellette's affidavit, remarkable for its vagueness and lack of detail or documentation, offers no explanation why he failed to appear and request a stay of proceedings, knowing that a federal complaint had been filed against and served on his client and that scheduling deadlines imposed by rule will otherwise proceed.

Finally, and damning for any alleged reliance on the alleged agreement with Kennedy, Donato's own sworn affidavit states that he received Speaks' request for entry of default (dated July 27, 2001) and informed ("reported" it) Ouellette of it.[12] Thus, at least by late July or early August of 2001, Ouellette should have been disabused of any notion he had that the case was being held in abeyance in deference to settlement negotiations. Nonetheless, Ouellette took no action: he never appeared in the case; did not otherwise contact the court; did not counsel Donato to file a pro se appearance and protective motion for time extension. An attorney may not sit idly by in the face of a potential default of his client, and credibly claim that

he continued to rely on what by that time would have been apparent were less than forthright representations (at least according to Ouellette). *See S.E.C. v. McNulty,* 137 F.3d 732, 735 & 738–39 (2d Cir.1998) (holding attorney's actions willful where attorney failed to answer a complaint in the face of letters from opposing counsel warning that, if no answer was forthcoming, opposing counsel would seek default, even though, after default entered, attorney wrote opposing counsel stating he "believed settlement negotiations were ongoing..."); *Sony Corp. v. S.W.I. Trading, Inc.,* 104 F.R.D. 535, 539–40 (S.D.N.Y.1985) (default for failing to answer complaint found willful where defendant claimed he was misled into believing plaintiff would not sue him for monetary relief but subsequently received a summons and complaint specifically seeking monetary damages: "[a]ssuming, *arguendo,* that at some point Einsidler believed plaintiffs would not seek a money judgment, Einsidler knew or should have known, based on plaintiffs' subsequent actions that plaintiffs had altered their litigation strategy").

When Donato retained Maurer in December of 2001,[13] Maurer was aware of the default judgment entered allegedly as a result of fraudulent and misleading conduct of Kennedy, *see* Maurer Aff. ¶ . 3a, but did not promptly file an appearance, a motion for relief from the judgment, or otherwise contact the Court. Rather, she waited until mid-January (January 15, 2002) to telephone Bernard Kennedy to offer one thousand dollars in settlement of the judgment against

---

action in the case prior to default) and absence of any evidence that he tried to insure that Maurer acted promptly with respect to the default judgment, *see infra* at p. 75, demonstrate his own gross negligence. *Cf. Enron Oil,* 10 F.3d 90 (finding no willfulness and reversing district court's denial of motion to *set aside entry of default* where defendant had initially retained counsel and filed a timely motion to dismiss, defendant's lawyer had withdrawn, defendant proceeded pro se, defendant failed to answer plaintiff's second amended complaint because he had not received it (a fact to which he alerted opposing counsel and the district court two months before entry of default), defendant's opposition to opposing counsel's default application was filed only a day or so late, and default resulted in defendant's joint and several liability for $257.3 million).

**12.** Ouellette's affidavit does not deny that he either received or was told by Donato about the request for default. Rather, Ouellette's affidavit vaguely states that Kennedy filed the request for default "without notifying [Ouellette] of his intention to move forward."

**13.** "Once Donato became aware that there was a default entered against him, he retained...." Def.'s Mem. in Supp. at 7. Neither the briefing nor Donato's affidavit explain how he became aware of the default judgment. This omission is striking in light of Donato's sworn statement that he did not receive any court notices or pleadings related to the case other than the summons and complaint and plaintiff's request for entry of default.

her client. After repeatedly being rebuffed by opposing counsel's silence,[14] she nonetheless waited until May 16, 2002 to file her appearance and motion for relief from judgment, six months after being retained to handle relief from the default judgment.

The Court has difficulty comprehending why an attorney accepting representation of a client under these circumstances would delay taking immediate action with the Court knowing a default judgment had been entered against her new client allegedly procured by opposing counsel's deceptions. Maurer explains that she sought to avoid the cost to her client of a motion to re-open the case and relied on opposing counsel's "good faith openness to settlement." In light of what she believed at the time of her retention, Maurer provides no explanation of her characterization of opposing counsel's openness to settlement as in "good faith." Maurer should have known her chosen settlement strategy was futile by February 13, 2002, having received no responses to two telephone calls and two letters from the very individuals whom she believed had fraudulently obtained a judgment against her client by lulling his previous attorney into complacency. At that point, absent extraordinary circumstances not evident here, no attorney would be warranted or justified in relying on further representations as a basis for delay in taking formal action to set aside the default judgment. Yet, even after this obvious point of no return, Maurer delayed another three months before filing an appearance and motion for relief from judgment.

Ouellette's failure to keep current with the pleadings of his client's case after having notice of opposing counsel's filing of a request for entry of default and Maurer's unjustified and prolonged failure to appear and seek remedial action on the default judgment rises to the level of willful conduct, *see McNulty,* 137 F.3d at 738–39 (court may find default willful where conduct of counsel was egregious and was not satisfactorily explained, including failure, for unexplained reasons, to respond to a motion for summary judgment or, for flimsy reasons, to comply with scheduling orders), or at least constitutes gross negligence that weighs against setting aside the default judgment.

Further, such conduct must be imputed to Donato because he has "ma[de] no showing that he ... made any attempt to monitor [Ouellette's or Maurer's] handling of the lawsuit." *Id.* at 740 (holding attorney's actions imputed to defendant where defendant, a sophisticated business person, forwarded complaint to attorney but subsequently made no attempt to discuss the case or reach the attorney from the time the case commenced until eleven months later when default judgment was entered). Rather, Donato states in his affidavit that, other than "reporting" the complaint and request to enter default to Ouellette, he took no "other action with regard to this matter" because he "thought the matter was going [to] settle." Donato Aff. ¶¶. 5, 7, & 8. He has thus provided no evidence that he made any efforts to insure that Ouellette was attending to his defense. *See id.* Although after the default judgment was entered, Donato took action by obtaining new representation, he has provided no evidence of any attempts on his part to thereafter monitor her actions on his behalf. Accordingly, both the willful (or grossly negligent) conduct of Ouellette and Maurer will be imputed to Donato.[15]

### 3. Meritorious Defense

■ " 'A defense is meritorious if it is good at law so as to give the factfinder some determination to make.' " *Am. Alliance,* 92

**14.** Although Maurer details the course of her fruitless contacts with opposing counsel, she offers no explanation for the 2.5 month gap between her final effort and filing her appearance and motion.

**15.** Donato has not argued that his alleged lack of receipt of notice of Speaks' application for default judgment automatically invalidates the default judgment. *See* Fed.R.Civ.P. 55(b)(2) ("If the party against whom judgment by default is sought has appeared in the action, the party ... shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application."); *see also Brien v. Kullman Indus., Inc.,* 71 F.3d 1073, 1076 n. 3 (2d Cir.1995). Such argument would be misplaced. As neither Donato nor his representative even appeared before May 16, 2002, Fed.R.Civ.P. 55(b)(2) did not require service on Donato in August of 2001.

F.3d at 61 (*quoting Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir.1988)).

> In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively ..., but he must present evidence of facts that, 'if proven at trial, would constitute a complete defense.'

*McNulty*, 137 F.3d at 740 (*quoting Enron Oil*, 10 F.3d at 95).

Although referring to more than one defense and even counterclaims, *see* Def.'s Mem. in Support at 5 and 8; Resp. at 6, defendant proffers no proposed Answer with special defenses and the only specific defense or asserted factual basis for such defense that Donato raises is that he "fully reimbursed the Plaintiff for any money expended through the purchase of the automobile and by way of any repair done of that automobile...." Def.'s Mem. in Support at 5.[16] Donato's defense thus appears to be that of offset to actual damages Speaks may have suffered in the purchase and repair of the 1992 Ford and related costs, and not a defense on liability.

### a. TILA

"It is well settled ... that proof of actual deception or damages is unnecessary to a recovery of statutory damages under [TILA]." *Gambardella v. G. Fox & Co.*, 716 F.2d 104, 108 n. 4 (2d Cir.1983); *see also Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 800 (6th Cir.1996) ("A plaintiff in a TILA case need not prove that he or she suffered actual monetary damages in order to recover the statutory damages and attorney's fees."). Thus, Donato's claim of reimbursement of purchase price and repair are no defense to the award of $4,522 in reasonable attorney fees, $2,500 in statutory dam-

ages, and $250 in other fees. As the $439 awarded as actual damages for DMV registration and gap insurance could constitute "money ... expended through the purchase of the automobile," Donato's proffered offset defense could preclude such recovery.

### b. CUCC

Similarly, Donato's claimed reimbursement to plaintiff would not affect liability with respect to Speaks' claim that Donato sold plaintiff the 1992 Ford with defective brakes in violation of the implied warranty of merchantability implied in any sale of goods under Conn. Gen.Stat. § 42a–2–314, but rather would only serve to offset recoverable damages. *See Criscuolo v. Mauro Motors, Inc.*, 58 Conn.App. 537, 554–559, 754 A.2d 810 (2000). Thus, Donato's broad claim of reimbursement "by way of any repair done of that automobile ..." could include the actual damages awarded under the CUCC for brake repairs ($621.16) and perhaps related rental car costs ($451).

### c. CUTPA

For her CUTPA claim, Speaks was awarded $1,000 as "statutory" damages under Conn. Gen.Stat. § 42–110g(a),[17] which permits the recovery of actual damages derived from any ascertainable loss of money or property. Thus, "[t]he ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief." *Hinchliffe v. Am. Motors Corp.*, 184 Conn. 607, 615, 440 A.2d 810 (1981). As the statutory language suggests, "ascertainable loss" is not synonymous with actual damages, but includes, for example, a consumer's receipt of something other than that for which the consumer bargained even if the something is more valuable than the bargained-for and desired product. *Id.* at

---

**16.** *See also* Def.'s Mem in Support at 8 ("Among his defenses is the fact that Plaintiff has been reimbursed all money that she has expended in the purchase of the automobile."). The Court notes that Donato's defense is set forth only in briefing and not in his sworn affidavit.

**17.** "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act

or practice prohibited by section 42–110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages.... The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper."

614, 440 A.2d 810. However, the mere showing of an ascertainable loss does not automatically entitle the plaintiff to actual damages. Rather, those damages must be proven; otherwise, the plaintiff may only recover nominal or punitive damages, equitable relief and/or attorney fees. *Id.* at 618–19, 440 A.2d 810. Thus, where plaintiff claims a CUTPA violation based on a purchase of a defective automobile with a rolled back odometer and subsequent expenditures for repairs and alternative transportation, plaintiff's actual damages, if established, must be reduced by the amount of any refund of purchase price or other reimbursement of related expenditures. *See Prishwalko v. Bob Thomas Ford, Inc.,* 33 Conn.App. 575, 586–87, 636 A.2d 1383 (1994).

The CUTPA damages section of the recommended ruling referred only to "statutory" damages, which approximated the total awarded on plaintiff's CUCC claim for brake repairs ($621.16) and related rental car costs ($451).[18] Accordingly, Donato's offset defense, if proved, could preclude such an award.

### d. Summary

In summary, Donato's proffered defense, if established, would permit him to avoid $2,511.16 of the total judgment of $9,783.16. Thus, only with respect to the $2,511.16 does Donato's meritorious defense weigh in favor of relief from the default judgment. With respect to the balance, however, the absence of a meritorious defense weighs against relief.

### 4. Prejudice

Speaks contends that setting aside the default judgment will preclude her from obtaining evidence necessary to prove certain parts of her case because, in connection with a settlement with Donato's co-defendant ACCI, Speaks waived rights to obtain discovery from that co-defendant. Plaintiff does not address when such a private agreement could preclude the Court from ordering necessary

third party discovery or relieve a third party of the obligation to comply with such an order. Accordingly, the proffered prejudice does not weigh against relief from judgment.

### 5. Conclusion

Balancing all factors and cognizant of "the strong preference for resolving disputes on the merits," *American Alliance,* 92 F.3d at 62, the Court concludes that, under Fed. R.Civ.P. 60(b)(1), that part of the judgment potentially subject to Donato's offset defense, namely $2,511.16, should be set aside so that Donato may present evidence that such monies were actually paid. *See Sony Corp. v. Elm State Elec., Inc.,* 800 F.2d 317, 321 (2d Cir.1986) (affirming denial of motion to reopen default but remanding for further proceedings to determine proper amount of damages); *cf. Men's Sportswear, Inc. v. Sasson Jeans, Inc.,* 834 F.2d 1134, (2d Cir. 1987) (affirming district court's affirming of bankruptcy court's entry of default judgment but remanding for modification with respect to $139,594.27 of $1.1 million judgement). The willfulness (or gross negligence) of Ouellette and Maurer (both imputed to Donato) coupled with the lack of a meritorious defense as to liability or the balance of the judgment ($7,272) weigh heavily against the defaulted party, and, therefore, even in the absence of prejudice to plaintiff, the Court concludes that the balance of the judgment will remain undisturbed.

### B. Fed.R.Civ.P. 60(b)(3)

█ Fed.R.Civ.P. 60(b)(3) provides,

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (3) fraud . . . misrepresentation, or other misconduct of an adverse party . . . .

The moving party bears a heavy burden under Fed.R.Civ.P. 60(b)(3), as the motion "cannot be granted absent clear and convincing evidence of material misrepresenta-

---

**18.** As the Court sets aside both the damages awarded under CUCC and CUTPA, it does not revisit its earlier ruling with respect to whether dual recovery under CUCC and CUTPA for the same damages is permissible. The parties are invited to brief this issue in subsequent submissions.

tions...." *Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir.1989). This standard applies equally to relief sought from a default judgment. *See Nederlandsche Handel–Maatschappij v. Jay Emm, Inc.*, 301 F.2d 114, 115 (2d Cir.1962).

Donato has fallen short of this high standard. The only first hand account of Kennedy's alleged fraud or misconduct comes from Ouellette's affidavit. Consistent with the above discussion, the affidavit is too vague with respect to both the timing and substance of his alleged discussions with Kennedy, the manner of Kennedy's assent ("indicated") to the "agreement," and the details of such agreement (including the lack of explanation as to how the progress of the pleadings was to be stalled without leave of court) to constitute clear and convincing evidence of fraud or misconduct. Maurer's affidavit statement to the effect that Bernard Kennedy did not deny "that chain of events" (referring to the entry of default while Kennedy and Ouellette allegedly had a stand still agreement in place) does not transform Ouellette's affidavit into clear and convincing evidence.

Even if misrepresentations were made that the litigation would not be advanced by plaintiff, they are not material to obtaining the default judgment, since any such "fraud" would be glaringly apparent to Ouellette after Donato reported receipt of Speaks' request to enter default in late July or early August of 2001. The responsibility for any subsequent reliance must fall on Ouellette. Accordingly, Fed.R.Civ.P. 60(b)(3) affords no grounds or basis for setting aside the default judgment entered against Donato.[19]

## III. Conclusion

For the foregoing reasons, Donato's motion is DENIED as to setting aside the entry of default, but, pursuant to Fed.R.Civ.P.

---

**19.** Donato has also moved for relief from the default judgment under Fed.R.Civ.P. 60(b)(6), which permits a court to relieve a party from a final judgment for "any other reason justifying relief from the operation of judgment." Use of this catchall provision is only proper in cases involving "extraordinary circumstances," *Rodriguez v. Mitchell*, 252 F.3d 191, 201 (2d Cir.2001), or, stated differently, "extreme hardship." *See*

60(b)(1), GRANTED to permit defendant to present evidence of reimbursement as set off to $2,511.16 of the default judgment awarded as actual damages on plaintiff's TILA claim and actual or "statutory" damages on plaintiff's claims under CUCC and CUTPA. The default judgment will thus be partially set aside, and defendant has until April 14, 2003 to submit evidence of reimbursement to plaintiff for some or all of the $2,511.16 actual or "statutory" damages awarded and supporting memorandum. Plaintiff may file any response by April 28, 2003.

IT IS SO ORDERED.

---

*U.S. v. Karahalias*, 205 F.2d 331, 333 (2d Cir. 1953) (L.Hand, J.). Donato devotes little effort to this argument, citing no supporting case law and emphasizing only Kennedy's alleged fraudulent conduct. For the reasons discussed with respect to Donato's motion under Fed.R.Civ.P. 60(b)(1) and (3), the Court finds that this case does not approach the "extreme hardship" necessary to justify resort to Fed.R.Civ.P. 60(b)(6).