**SECURITIES AND EXCHANGE COMMISSION, Plaintiff–Appellee,**

v.

**Robert J. McNULTY, George G. Handgis, Franklin D. Roberts, John M. Shanklin And W.N. Thompson, Defendants,**

**John M. Shanklin, Defendant–Appellant.**

Docket No. 97–6122.

United States Court of Appeals, Second Circuit.

Argued Nov. 17, 1997.

Decided March 3, 1998.

Susan K. Straus, Washington, DC (Richard H. Walker, General Counsel, Jacob H. Stillman, Associate General Counsel, Susan Fer-

ris Wyderko, Assistant General Counsel, Paul Gonson, Solicitor, Washington, DC, on the brief), for Plaintiff–Appellee.

Gregg A. Rapoport, Los Angeles, CA (Jack I. Samet, Baker & Hostetler, Los Angeles, CA, on the brief), for Defendant–Appellant.

Before: KEARSE and CARDAMONE, Circuit Judges, and LEISURE, District Judge *.

KEARSE, Circuit Judge:

Defendant John M. Shanklin, against whom a default judgment was entered in the United States District Court for the Southern District of New York for failure to answer the complaint filed by plaintiff Securities and Exchange Commission ("SEC" or the "Commission"), challenges the order of that court, Michael B. Mukasey, *Judge,* denying his motion to vacate the default judgment. In denying the motion, the district court ruled that Shanklin had failed to show that the default was not willful and that he was not culpable, and had failed to proffer a meritorious defense to the SEC's claims. On appeal, Shanklin contends principally that the district court erred in imputing his attorney's neglect to him and in failing to resolve doubts as to the merits of Shanklin's defenses in his favor. Finding no merit in these contentions, we affirm.

## I. BACKGROUND

The present action was commenced against Shanklin and others, including defendant Robert J. McNulty, in connection with several corporations controlled by McNulty, which in 1988–1990 had raised $78 million through various public and private offerings of securities. According to the complaint, portions of these moneys were diverted to McNulty and other entities he controlled, an intended use that the defendants had fraudulently concealed. Shanklin, during part of the pertinent period, was an officer and director of two McNulty companies: Auto Giant, Inc. ("Auto Giant"), of which he was executive vice president, chief executive officer, and

chief operating officer; and Auto Depot, Inc. ("Auto Depot"), of which he was president, chief executive officer, chief operating officer, and chief administrative officer. In those capacities, Shanklin was responsible for the two companies' internal books and records and for their annual and quarterly filings with the SEC. The complaint alleged that company books and certain of the SEC filings misrepresented or falsely concealed material transactions, and that Shanklin knew, or recklessly failed to know, of those misrepresentations or concealments.

### A. *The Default*

The present action was commenced on September 30, 1994, following a lengthy SEC investigation in which Shanklin had been represented by Fred Rucker, Esq. The complaint described the conduct of the defendants in connection with the McNulty companies' securities offerings and, to the extent pertinent here, alleged that Shanklin had engaged in, and unless enjoined would continue to engage in, conduct violative of §§ 10(b), 13(a), and 13(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), 78m(a), and 78m(b) (1994), and various SEC Rules promulgated thereunder, including Rule 10b–5, 17 C.F.R. § 240.10b–5 (1997). The SEC requested, *inter alia,* the imposition of a civil fine and the entry of a permanent injunction forbidding such violations. On October 28, Shanklin acknowledged receipt of a copy of the complaint and waived service of summons. He forwarded the complaint to Rucker as his attorney.

Shanklin's time to answer the complaint was extended to December 13, 1994, and then to December 27. Rucker did not file an answer on behalf of Shanklin or move to dismiss the action. Nor did he attend any of the pretrial conferences called by the district court or, despite co-counsel's urging, join in the other defendants' motions to dismiss or to change venue. Although Rucker and the SEC discussed settlement of the case against Shanklin, those discussions proved fruitless. In April 1995, with Shanklin's answer some

---

* Honorable Peter K. Leisure, of the United States District Court for the Southern District of New York, sitting by designation.

four months overdue, the SEC sent Rucker a letter stating that if the answer were not forthcoming the Commission would seek entry of a default. The SEC sent Rucker similar letters in May and June. No answer was ever filed. The SEC moved for entry of a default in August 1995.

The district court, receiving no response to the motion, entered a default judgment against Shanklin on September 11, 1995. The judgment enjoined Shanklin from violating §§ 10(b), 13(a), and 13(b) of the 1934 Act, 15 U.S.C. §§ 78j(b), 78m(a) and 78m(b), and several SEC Rules. The judgment directed that further proceedings be held before a magistrate judge to determine the amount of Shanklin's civil fine.

The SEC served copies of the default judgment on both Rucker and Shanklin. Shanklin eventually returned to the SEC an affidavit acknowledging his receipt of the judgment. Rucker wrote to SEC Branch Chief James P. Bodovitz, stating that he had believed settlement negotiations were ongoing and threatening to "seek relief from the default." (Letter from Fred Rucker to James P. Bodovitz, dated September 29, 1995). Bodovitz wrote back, dismissing Rucker's position as "patently incorrect" and pointing out that

> I wrote letters to you in . . . regard [to the SEC's intention to seek a default judgment] on April 11, 1995, April 26, 1995, May 11, 1995, June 1, 1995, and June 25, 1995. You responded to none of these letters.

(Letter from James P. Bodovitz to Fred Rucker, dated October 2, 1995.)

In mid-November 1995, Rucker filed Shanklin's opposition to the request for monetary sanctions. That submission stated that "Shanklin will be filing within the next two days a motion for relief from [the] default." (Opposition of Defendant John M. Shanklin to Imposition of Civil Monetary Penalties, dated Nov. 15, 1995, at 2 n. 1.) In a letter sent contemporaneously to Shanklin, Rucker stated that he was "in the process of preparing a motion for relief from the default." (Letter from Fred Rucker to John M. Shanklin, dated November 17, 1995.) Rucker never filed such a motion.

### B. *Denial of the Motion To Vacate*

In May 1996, Shanklin substituted new counsel and moved under Fed.R.Civ.P. 60(b)(1) and 60(b)(6) to vacate the default judgment. The motion argued principally (a) that Rucker alone was responsible for Shanklin's failure to answer the complaint, (b) that the SEC could not prove its claims against Shanklin because it could not establish his scienter, and (c) that the entry of injunctive relief against him was inappropriate. In support of the motion, Shanklin submitted his affidavit stating, *inter alia*, that until his new attorneys obtained Rucker's files, Shanklin had been unaware of the SEC's threats to move for default if he did not answer. Further, Shanklin stated that after the default judgment was entered he believed Rucker would move to vacate the default, because Rucker promised to do so and in fact thereafter billed Shanklin for work in connection with the promised motion. (Affidavit of John M. Shanklin in Support of Motion To Set Aside Default Judgment, dated May 16, 1996 ("Shanklin Aff."), ¶¶ 2–24.) Shanklin's affidavit also described his involvement with the McNulty companies, denying any role in the public offerings, explaining his conduct in connection with the SEC reports as to certain intra-organization money transfers, and maintaining that he had had no knowledge of any misstatements in corporate filings or other documents. (*Id.* ¶¶ 25–34.) In arguing that there were no grounds for the entry of an injunction against him, Shanklin stated, *inter alia*, that prior to joining the McNulty companies, he "had held executive positions and was responsible for the financial, administrative and operational functions within several major publicly-held corporations" (*id.* ¶ 36), and that in his "more than 20 years of senior management experience, and over 30 years of overall corporate management," he had "prepared and signed numerous securities filings, and apart from this case, ha[d] not once even been criticized or questioned about the accuracy or completeness of the[ ] disclosures" (*id.* ¶ 37).

The SEC opposed the motion to vacate the default, submitting various exhibits to show

both willfulness and the lack of merit in Shanklin's defenses. The Commission argued that willfulness was revealed by the sequence of events, including the Commission's repeated letters to Rucker advising him that the Commission was about to move for a default, Rucker's inaction in the face of those warnings, and the lack of any motion to vacate the default judgment until some eight months after its entry. As to Shanklin's defense of lack of scienter, the Commission argued that § 13 and the SEC Rules thereunder, which require publicly-traded companies to keep records that accurately and fairly reflect their dispositions of assets, and to file with the Commission quarterly and annual reports containing sufficient information to make the reports not misleading, are provisions under which civil liability may be imposed without proof of scienter. With respect to its claims under § 10(b) and Rule 10b–5, of which scienter is an element, the Commission submitted, *inter alia*, excerpts from deposition testimony by Michael A. Cross, a member of the law firm that had acted as outside counsel to Auto Giant and Auto Depot, describing a conversation in which Cross had questioned Shanklin as to the veracity of a document that he advised Shanklin not to file with the SEC, and that Shanklin nonetheless proceeded to file.

In an Opinion and Order dated July 26, 1996 ("Opinion"), the district court denied Shanklin's motion to vacate. The court considered "(1) whether the default was willful, (2) whether setting aside the default would prejudice the [SEC], and (3) whether [Shanklin] ha[d] presented a meritorious defense to the action," noting that it would "apply these factors generously, and resolve any doubts in favor of the defaulting party." Opinion at 6. Following a thorough analysis of the record, described below, the court found that the default was willful and should be imputed to Shanklin; that the delay occasioned by setting aside the default would prejudice the SEC, albeit only slightly; and that Shanklin had not shown that he had a meritorious defense to the SEC's claims.

As to willfulness, the court stated that Rucker's

failure to respond to the complaint, his failure to appear at pretrial conferences, and his failure to move to set aside the default judgment despite billing his client for preparing a motion, all amount to grossly negligent behavior that cannot reasonably be characterized as excusable neglect. In addition, there is no evidence that Shanklin diligently induced Rucker to fulfill his duty. Shanklin does not show that he discussed the suit with Rucker at any time between October 1994 and September 1995. Absent Shanklin's diligent efforts to induce Rucker to fulfill his duty, Shanklin is bound by Rucker's willful conduct. Rucker's egregious conduct may warrant a malpractice suit, but Shanklin's failure to monitor that conduct does not justify relieving him of the default judgment.

*Id.* at 8–9. As to prejudice to the Commission, the court noted that reopening the case against Shanklin would "require it to conduct discovery with many of the same individuals and entities as it has already done in preparation for the Handgis trial," which was imminent. *Id.* at 10. The court regarded this prejudice as "slight[ ]," however, because the "SEC ha[d] not shown that such delay would result in a loss of evidence or provide opportunities for fraud or collusion." *Id.*

As to the quality of Shanklin's scienter defense, the court found that his disclaimers were irrelevant to the SEC's claims under §§ 13(a) and (b) because scienter is not an element of those claims. The court stated that, in light of the fact that "Shanklin ... admittedly filed false and incomplete disclosure forms with the SEC, he is liable under" § 13. Opinion at 15. The court rejected as immaterial Shanklin's argument that one of the forms in question had not been prepared by him, observing that

Shanklin signed the form, and as the chief officer of Auto Depot and Auto Giant, and a sophisticated businessman, he is held responsible for the accuracy of the information therein. Shanklin cannot escape that responsibility by entrusting the preparation of the filings to a professional.

*Id.* at 16.

As to the claims under § 10(b) and Rule 10b–5, of which scienter is an element, the

court found Shanklin's pleas of innocent ignorance insufficient in light of both Cross's deposition testimony and Shanklin's own affidavit's descriptions of events that should have been recognized by Shanklin, given his extensive business experience, as signs of fraud:

> Shanklin admits he drafted the false Auto Giant quarterly report in November 1990 ("the November 1990 filing"), and admits also that he knew McNulty wanted to conceal a transfer of $805,000 from Auto Giant to Centaur [a McNulty company]. ([Shanklin Aff.] ¶¶ 30(b), 30(c)) According to Shanklin, in November 1990, when he learned of the $805,000 transfer to Centaur, he asked McNulty for information about it. McNulty told him not to disclose the transaction, refused to provide further information, and called him derogatory names. (*Id.* ¶ 30(b)) In a meeting later that day or the following day, Shanklin told McNulty he would nevertheless report the transaction on the November 1990 filing, (*Id.*) and McNulty allegedly told him that the transfer's purpose was to fund deposits on real estate leases. (*Id.* ¶ 30(c)) McNulty referred Shanklin to defendant Willard Thompson, but Thompson "was evasive and refused to provide detail about Centaur's purported use of the Auto Giant funds to secure real estate leases. For example, he would not tell me who the landlords on the leased properties were, or the terms of the leases." (*Id.* ¶ 30(e))

In addition, in his deposition on April 3, 1996, Michael Cross, an attorney at Cooper & Dempsey, testified that he reviewed Shanklin's draft of Auto Giant's November 1990 filing, questioned its truthfulness, requested an explanation from Shanklin, and advised Shanklin that the document should not be filed with the Commission. (Bodovitz Decl. ¶ 7, Ex. 4) Despite Thompson's evasive response and Cross's advice, Shanklin filed the form with the SEC.

Although Shanklin claims he did not learn the information McNulty had given him was incorrect until after an internal investigation later disclosed that the funds actually went to Global [a McNulty company] to buy securities for Centaur (*id.* ¶ 30(f)), Shanklin had good reason to be suspicious of McNulty's statement when Thompson showed reluctance to provide further information. That McNulty and Thompson both refused to provide him with relevant information should have alerted Shanklin to the likelihood of material omissions and misrepresentations in the November 1990 filing that he prepared. Shanklin cannot "escape liability for fraud by closing his eyes to what he saw and could readily understand." … Shanklin's conscious avoidance of knowledge satisfies the scienter requirement….

In sum, Shanklin does not sufficiently demonstrate that he lacked the requisite scienter so as to present a meritorious defense that would relieve him from the default judgment. While he may not have known the precise details of the transactions McNulty sought to conceal, or the reason McNulty sought to conceal them, he knew that the disclosure forms he prepared and signed were inaccurate and omitted material information.

Opinion at 12–14.

The district court concluded that Shanklin had not shown good cause for vacating the default judgment, and it therefore denied the motion.

Eventually, the magistrate judge recommended that Shanklin be required to pay a civil fine of $7,500. The district court, in an order dated March 20, 1997 ("March 1997 Order"), adopted that recommendation, noting that neither of the parties had filed any objection. Thereafter, the case was closed.

 Shanklin has filed a notice of appeal, stating that he is appealing from both the order denying his motion to vacate the default and the March 1997 Order adopting the magistrate judge's recommendation for a $7,500 civil fine. We do not address the latter order, both because in the absence of a timely objection in the district court to the recommendation of the magistrate judge no issue is preserved for review, *see, e.g., Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988), and because Shanklin has not addressed the March 1997 Order in his brief on appeal, *see, e.g.,* Fed. R.App. P. 28(a)(4);

738

*Day v. Morgenthau*, 909 F.2d 75, 76 (2d Cir.1990).

## II. DISCUSSION

In challenging the district court's refusal to vacate the default, Shanklin argues principally (1) that his attorney's conduct was not willful, and even if willful it should not have been imputed to him; and (2) that his lack of scienter constitutes a meritorious defense to the securities fraud charges against him. For the reasons below, we reject his contentions.

■ Rule 60(b) provides, in pertinent part, that the district court may grant a motion for relief from a judgment on the ground of "excusable neglect," Fed.R.Civ.P. 60(b)(1), or for "any other reason justifying relief from the operation of the judgment," Fed.R.Civ.P. 60(b)(6); *see also* Fed.R.Civ.P. 55(c) (providing that default judgments may be set aside in accordance with Rule 60(b)). A motion to vacate a default judgment is addressed to the sound discretion of the district court, *see, e.g., Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993), and we will not reverse the denial of such a motion except for abuse of discretion, *see, e.g., id.; American Alliance Insurance Co. v. Eagle Insurance Co.*, 92 F.3d 57, 62 (2d Cir.1996) ("*American Alliance*"); *Davis v. Musler*, 713 F.2d 907, 913 (2d Cir.1983).

■ In deciding a motion to vacate a default judgment, the district court is to be guided principally by three factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice. *See, e.g., American Alliance*, 92 F.3d at 59; *Davis v. Musler*, 713 F.2d at 915. An absence of prejudice to the nondefaulting party would not in itself entitle the defaulting party to relief from the judgment. "[C]ourts have an interest in expediting litigation, [and] abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct," *American Alliance*, 92 F.3d at 61; the district court thus has discretion to deny the motion to vacate if

it is persuaded that the default was willful and is unpersuaded that the defaulting party has a meritorious defense, *see, e.g., Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 244 (2d Cir.1994); *cf. Marziliano v. Heckler*, 728 F.2d 151, 157 (2d Cir.1984) (same with respect to motion to vacate default pursuant to Rule 55(c)).

On this appeal, the principal challenges are to the court's rulings that the default was willful and that Shanklin did not proffer a meritorious defense.

### A. Willfulness

The issue of willfulness in the present case comprises two questions: (1) whether Rucker's failure to file an answer to the complaint was the result of a shortcoming more culpable than negligence or even gross negligence, and (2) whether that shortcoming was appropriately attributed to Shanklin. The district court properly answered both questions in the affirmative.

We have interpreted "willfulness," in the context of a default, to refer to conduct that is more than merely negligent or careless. *See, e.g., American Alliance*, 92 F.3d at 61 (default due to filing mistake by defendant's in-house counsel's clerk, held not willful); *Davis v. Musler*, 713 F.2d at 915–16 (default due to failure to note that complaint in second suit, served simultaneously with subpoenas and deposition notices in similar first suit, initiated a new lawsuit, may be found nonwillful); *Enron Oil Corp. v. Diakuhara*, 10 F.3d at 97 (failure to answer second amended complaint should be held nonwillful if *pro se* defendant, who had timely answered prior complaints and promptly opposed motion to enter default, did not, as he claimed, receive second amended complaint).

■ On the other hand, the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained. *See, e.g., American Alliance*, 92 F.3d at 60–61 (discussing cases). Thus, defaults have been found willful where, for example, an attorney failed, for unexplained reasons, to respond to a motion for summary judgment, *see United States v. Cirami*, 535 F.2d 736,

739 (2d Cir.1976) (*"Cirami I"*); or failed, for flimsy reasons, to comply with scheduling orders, *see, e.g., Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666 (2d Cir.1980); or failed, for untenable reasons, after defendants had "purposely evaded service for months," to answer the complaint, *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d at 243–44; or failed, for incredible reasons, to appear for a scheduled pretrial conference and unaccountably delayed more than 10 months before moving to vacate the ensuing default, *see Dominguez v. United States*, 583 F.2d 615, 618 (2d Cir.1978) (per curiam), *cert. denied*, 439 U.S. 1117, 99 S.Ct. 1023, 59 L.Ed.2d 76 (1979).

■ As the record in the present case reveals, Shanklin was served with the complaint in October 1994 and acknowledged its receipt. His answer was due in December 1994, but no answer was filed. The SEC wrote Rucker in April 1995, stating that if he did not file Shanklin's answer promptly thereafter, the Commission would move for entry of a default. The Commission thereafter sent Rucker additional letters giving the same warning. There can be no suggestion that Rucker did not receive these letters; Shanklin's new counsel found in Rucker's files what appears to be a copy of a response to one such letter, stating that Shanklin's answer would be filed within two days. The record contains no affidavit from Rucker offering any explanation for his conduct. Shanklin himself states that the failure to file his answer was the result of "Rucker's outright disregard for the repeated warnings by the SEC that the SEC intended to seek entry of Shanklin's default" (Shanklin brief on appeal at 24; Shanklin Memorandum of Law in Support of Motion to Set Aside Default Judgment ("Shanklin Memorandum") at 22), conduct that was "outrageous" (Shanklin Memorandum at 23).

The district court's finding that Rucker's conduct was egregious is thus amply supported. There can be no question on this record that the district court was correct in concluding that the neglect was not excusable and that the default was willful. Accordingly, we turn to the question of whether the willful default was permissibly attributed to Shanklin himself.

■ Normally, the conduct of an attorney is imputed to his client, for allowing a party to evade "the consequences of the acts or omissions of [ ]his freely selected agent" "would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). Thus, in the context of a default judgment, we "ha[ve] rather consistently refused to relieve a client of the burdens of a final judgment entered against him due to the mistake or omission of his attorney." *Cirami I*, 535 F.2d at 739; *see, e.g., Chira v. Lockheed Aircraft Corp.*, 634 F.2d at 666; *Dominguez v. United States*, 583 F.2d at 618. In *Cirami I*, a default had been entered following defendants' failure to respond to the government's motion for summary judgment. We affirmed the denial of the motion to vacate because the defendants, one of whom was "an experienced businessman," stated merely that the reason for counsel's failure was "unknown," 535 F.2d at 739, and the defendants provided no evidence to suggest that they had ever made any efforts to determine that counsel was tending to the lawsuit. We stated:

> We have been provided with no affidavit of [the former attorney] which would cast any light on the circumstances of his failure to contest the government's motion for partial summary judgment. Neither have we received any affidavits from present counsel of [*sic*] appellants which would indicate what efforts, if any, have been made to elicit [the former attorney's] testimony, either voluntarily or under subpoena.... [T]here is no indication that any efforts were made by Cirami or his wife to ascertain at the time the status of the matter or the activity, if any, of his then-counsel....
>
> ....
>
> [11] .... [T]here is no allegation of any effort to contact the former attorney to ascertain the status of the litigation at any point or even to provide the court below with any explanation for his failure

to oppose the motion for summary judgment.

*Id.* at 739, 741. We concluded that the default was properly allowed to stand since the record was "bereft of any indication of client diligence." *Id.* at 741. *See also Dominguez v. United States,* 583 F.2d at 618 (upholding refusal to vacate default where "there [wa]s no particularized showing of exceptional circumstances explaining [counsel's] gross negligence *and no indication of diligent efforts by appellant to induce him to fulfill his duty* " (emphasis added)). In sum, where the attorney's conduct has been found to be willful, the willfulness will be imputed to the party himself where he makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit.

In *United States v. Cirami,* 563 F.2d 26 (2d Cir.1977) ("*Cirami II* "), we considered the *Cirami I* defendants' post-*Cirami I* renewed motion to vacate the default. The renewed motion, unlike the original motion, was supported by affidavits asserting, *inter alia,* that the defendants had in fact, through an intermediary, diligently inquired of their attorney as to the status of their case "three or four times a week" over a six-month period and that the attorney had given assurances on each occasion that the matter was being handled properly. *Id.* at 33. We ruled that, if established, these assertions would provide ground for not holding the defendants responsible for their attorney's neglect, and we remanded for a hearing as to the truth of the defendants' assertions. *See also Vindigni v. Meyer,* 441 F.2d 376, 377–78 (2d Cir.1971) (vacating a dismissal for failure to prosecute where the defaulting party's attorney had apparently "disappeared" during pretrial proceedings, and remanding for findings as to the truth of party's allegation that he had made diligent attempts to locate the attorney).

▆ In the present case, the district court properly found that Shanklin had made no showing of diligence that would warrant relieving him of the default judgment. Though Shanklin's memorandum of law stated that "Shanklin, by his own conduct, has done everything in his power to *reverse the consequences* of Rucker's outrageous incom-

petence" (Shanklin Memorandum at 23 (emphasis added)), neither the memorandum nor his affidavit gave any indication that Shanklin had done anything whatever to prevent the default's occurrence. For example, although Shanklin stated in his affidavit that he had placed some 20 calls to Rucker in the wake of the default judgment, he did not suggest that he had discussed the case with Rucker at all from the time the case was commenced in October 1994 until the default was entered in September 1995, or that he had made any effort to reach Rucker during that nearly one-year period. Similarly, although Shanklin indicated in his affidavit that he believed Rucker was preparing a motion to vacate the default, in part because Rucker billed him for alleged services on such a motion, Shanklin did not state, suggest, or in any way intimate that he had received any bills from Rucker with respect to the lawsuit at any time prior to the default. Thus, the record reveals a party who by his own description is a sophisticated businessman, who after being sued by the SEC apparently did not talk to his attorney for nearly a year, and who apparently received no bills during that time to indicate that any attention was being given to his case. We see no basis on which to overturn the district court's conclusion that the willful default of Rucker should be imputed to Shanklin.

### B. *Meritorious Defense*

▆ In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, *see, e.g., Davis v. Musler,* 713 F.2d at 916, but he must present evidence of facts that, "if proven at trial, would constitute a complete defense," *Enron Oil Corp. v. Diakuhara,* 10 F.3d at 98. We see no error in the district court's assessments, set out in detail in Part I.B. above, that Shanklin's denials of scienter would not constitute such a defense.

▆ First, the court's ruling that lack of scienter would not be a defense to the claims under § 13 and the regulations thereunder was consistent with precedent in this Circuit and with the Commission's interpretive regu-

lations indicating that scienter is not an element of civil claims under those provisions. *See generally SEC v. Koenig,* 469 F.2d 198, 200 (2d Cir.1972) (upholding finding of § 13(a) liability, without mention of scienter, of top corporate officer for failure to include required information in SEC reports); "Promotion of the Reliability of Financial Information and Prevention of the Concealment of Questionable or Illegal Corporate Payments and Practices," Exchange Act Release No. 34–15570, 16 S.E.C. Docket 1143, 1151, 1979 WL 17892 at *9–*10 (February 15, 1979) (no scienter requirement inserted in SEC Rule 13b2–1, 17 C.F.R. § 240.13b2–1, because § 13(b) of the 1934 Act "contains no words indicating that Congress intended to impose a 'scienter' requirement"). The Commission's interpretations of § 13 and of its own regulations thereunder are entitled to deference. *See, e.g., Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (mandating deference to administering agency's reasonable statutory interpretations); *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 417–18, 65 S.Ct. 1215, 1218–19, 89 L.Ed. 1700 (1945) (same with respect to agency's interpretation of its own regulations). Further, the district court's view that scienter is not a prerequisite to civil liability under § 13 is supported by the fact that in 1988, Congress amended § 13(b) to provide that "knowing[ ]" falsification is required before "*criminal* liability shall be imposed," Foreign Corrupt Practices Act Amendments of 1988, Pub.L. No. 100–418, § 5002, 102 Stat. 1415, 1415 (1988) (codified at 15 U.S.C. § 78m(b) (1994) (emphasis added)); *see also* H. Conf. Rep. 100–576, at 916 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1949–50, plainly implying that falsification of the information to be filed in accordance with § 13(b) need not be knowing in order to lead to civil liability.

■ Second, the scienter needed for proof of a claim under § 10(b) or Rule 10b–5, *see Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1380–81, 47 L.Ed.2d 668 (1976), may be established through a showing of reckless disregard for the truth, *see Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 46 (2d Cir.), *cert. denied,* 439 U.S.

1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978), that is, "conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care.'" *Id.* at 47. The district court's finding that Shanklin displayed at least a reckless disregard for the truth is well supported by the evidence, including Shanklin's own affidavit, that he included false statements in SEC filings notwithstanding the obviously evasive and suspicious statements made to him by McNulty and Thompson, and notwithstanding the advice given to him by outside counsel that he should omit those statements.

■ Finally, Shanklin argues also that it was inappropriate for the district court to grant injunctive relief against him. The appeal from the denial of a motion to vacate pursuant to Rule 60(b) brings up for review only the validity of that denial, not the merits of the underlying judgment itself. *See, e.g., Browder v. Director, Department of Corrections of Illinois,* 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978); *Davis v. Musler,* 713 F.2d at 912; *Cirami I,* 535 F.2d at 741. We thus doubt that the question of the propriety of the injunction is properly before us on this appeal. To the extent that the appropriateness-of-relief issue is properly before us, however, we note that it is within the district court's discretion to enter such an injunction if it considers that relief warranted by a culpable defendant's "continued protestations of innocence," *SEC v. Lorin,* 76 F.3d 458, 461 (2d Cir.1996) (per curiam), and we see no abuse of discretion here, given Shanklin's efforts to shift responsibility to others and his persistent denial, notwithstanding the record evidence of scienter, of any culpable conduct.

CONCLUSION

We have considered all of Shanklin's contentions on this appeal, and have found in them no basis for reversal. The order of the district court denying the motion to vacate is affirmed.