17-2560
*In Re: Deutsche Bank Aktienges*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 13th day of April, two thousand eighteen.

Present:    ROBERT A. KATZMANN,
                      *Chief Judge*,
            JOHN M. WALKER, JR.,
                      *Circuit Judge*,
            VICTOR A. BOLDEN,
                      *District Judge*.[*]

---

ANDREI SFIRAIALA, WARREN RAMANATHAN,

            *Plaintiffs - Appellants*,

JAMES RANSON, individually, on behalf of all others similarly situated, DAMON KNAUSS, ESSAM HAMOUDA, BRAD BJORKLUND, BARBARA PRISCUS, CHESTER COUNTY EMPLOYEES RETIREMENT FUND,

            *Plaintiffs*,

                      v.                                  No. 17-2560

DEUTSCHE BANK AKTIENGESELLSCHAFT, ANSHUMAN JAIN, JOHN CRYAN, MARCUS SCHENCK,

---

[*] Judge Victor A. Bolden, United States District Court for the District of Connecticut, sitting by designation.

*Defendants - Appellees*,

STEFAN KRAUSE, JUERGEN FITSCHEN,
DEUTSCHE BANK RUSSIA, STEFAN KRAUSE,
STEPHEN LEITHNER, STUART LEWIS, RAINER
NESKE, HENRY RITCHOTTE, TIMOTHY
WISWELL, JOERG BONGARTZ, BATUBAY
OZKAN,

        *Defendants.*[†]

_____

For Plaintiffs-Appellants:          JEREMY A. LIEBERMAN (Emma Gilmore, Jennifer Banner Sobers, *on the brief*), Pomerantz LLP, New York, NY.

For Defendants-Appellees:          CHARLES A. GILMAN (Tara H. Curtin, David G. Januszewski, John M. Schoolman, *on the brief*), Cahill Gordon & Reindel LLP, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Torres, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-appellants Andrei Sfiraiala and Warren Ramanathan bring this putative class on behalf of all individuals who purchased or acquired Deutsche Bank securities between January 31, 2013 and July 26, 2016 alleging that defendants-appellees Deutsche Bank and several of its corporate officers materially misrepresented the effectiveness of Deutsche Bank's internal controls in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. The United States District Court for the Southern District of New York (Torres, *J.*) dismissed the action pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) for failure to adequately allege materially false statements or scienter. *In re Deutsche Bank Aktiengesellschaft*

_____

[†] The Clerk of Court is directed to amend the official caption as set forth above.

*Sec. Litig.*, No. 16CIV3495ATBCM, 2017 WL 4049253 (S.D.N.Y. June 28, 2017). The plaintiffs subsequently sought leave to amend their complaint under Federal Rule of Civil Procedure 15(a), and to either amend the judgment under Federal Rule of Civil Procedure 59(e) or vacate the judgment under Federal Rule of Civil Procedure 60(b). The district court denied the motion as futile, and plaintiffs timely appealed. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review *de novo* a district court's dismissal for failure to state a claim, assuming all well-pleaded factual allegations to be true. *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 103–04 (2d Cir. 2009). "Any complaint alleging securities fraud must satisfy the heightened pleading requirements of the [Private Securities Litigation Reform Act ("PSLRA")] and [Federal Rule of Civil Procedure] 9(b) by stating with particularity the circumstances constituting fraud." *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). While "we normally draw reasonable inferences in the non-movant's favor on a motion to dismiss, the PSLRA establishes a more stringent rule for inferences involving scienter because the PSLRA requires particular allegations giving rise to a strong inference of scienter." *Id.* (internal quotation marks omitted).

Under Section 10(b) of the Securities Exchange Act of 1934, it is illegal "for any person, directly or indirectly . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of [the] rules and regulations" that the Securities and Exchange Commission ("SEC") prescribes. 15 U.S.C. § 78j. SEC Rule 10b–5, promulgated under Section 10(b), prohibits "mak[ing] any untrue statement of a material fact or [omitting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

3

17 C.F.R. § 240.10b–5(b). "To state a claim under § 10(b) of the Securities Exchange Act or Rule 10b–5, a plaintiff must plead that the defendant (1) made a false material representation or omitted a material fact, (2) with scienter, and (3) that the plaintiff's reliance on defendant's action caused plaintiff injury." *Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005).

We agree with the district court that the plaintiffs have failed to adequately allege scienter. "The requisite scienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198. In order to show motive and opportunity to commit fraud, however, plaintiffs must do more than allege that defendants wished to maintain "the appearance of corporate profitability" or to "prolong the benefits of holding corporate office." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) (internal quotation marks omitted). "If scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995).

Plaintiffs have failed to show motive and opportunity to commit fraud because they have not adequately alleged that the individual defendants received a "concrete and personal benefit" from making their alleged misrepresentations. *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). Although plaintiffs assert that Deutsche Bank's Russia office had a culture of "greed and corruption," App. 832, they fail to allege how any of the individual defendants personally benefited from making the alleged misrepresentations.

We further conclude that the plaintiffs have failed to sufficiently allege conscious misbehavior or recklessness. "When the defendant is a corporate entity, . . . the pleaded facts

4

must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). Plaintiffs here do not argue that the individual defendants knowingly made the alleged misrepresentations. They instead argue that the individual defendants recklessly disregarded facts showing that their representations concerning Deutsche Bank's internal controls were inadequate.[1]

Recklessness in the securities context requires "conduct that at the least is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *S. Cherry St.*, 573 F.3d at 109 (internal quotation marks and alterations omitted). Recklessness accordingly may be shown where the "defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." *Id.* (internal quotation marks and alterations omitted). It may also be shown where the defendants questioned the veracity of the statements they were making but failed to investigate. *See S.E.C. v. McNulty*, 137 F.3d 732, 741 (2d Cir. 1998) (finding recklessness where the defendant made false statements despite "the obviously evasive and suspicious statements made to him by [corporate officials], and notwithstanding the advice given to him by outside counsel that he should omit those statements.").

Plaintiffs here rely heavily on a consent order between Deutsche Bank and the New York Department of Financial Services entered on January 30, 2017, whereby Deutsche Bank admitted that it had "serious compliance deficiencies . . . that spanned Deutsche Bank's global enterprise"

---

[1] Our decision in *Teamsters* recognized that "[i]t is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and disseminated the fraud." *Id*. We have not since elaborated on when this is the case, and plaintiffs have failed to allege facts supporting an inference of scienter on this ground regardless of the relevant standard.

and allowed a group of Moscow-based "bank traders and offshore entities to improperly and covertly transfer more than $10 billion out of Russia." App. 828.[2] The consent order makes clear, however, that "no concerns relevant to the suspicious trading activities were ever escalated out of Moscow." *Id.* at 841. Instead, the Moscow office's direct supervisor in London generally did not discuss "compliance topics . . . during regular business calls or meetings," and even "praised the work of the [Moscow] supervisor for engaging local clients with global products." *Id.* at 841-42. As a result, it was only "[o]nce the mirror trade scheme became sufficiently elevated within Deutsche Bank's investigation function (in March 2015)" that "the Bank commenced an internal investigation designed to identify the background of the suspicious trades." *Id.* at 843. The consent order thus contradicts the plaintiffs' argument that the individual defendants were aware of any wrongdoing at the time they made their alleged misrepresentations.

The plaintiffs' reliance on regulatory reports from the Federal Reserve further fails to raise an inference of scienter because the reports largely do not concern Deutsche Bank's anti-money laundering controls—the subject matter of the alleged misrepresentations. For example, the pleadings note that between 2002 and 2013, the Federal Reserve Bank "warned Deutsche Bank of significant weaknesses in the bank's regulatory reporting framework, including: a disjointed and inadequate regulatory reporting infrastructure; inadequate monitoring functions; insufficient breadth and depth of regulatory reporting training; limited accountability policies; and material errors and poor data integrity." *Id.* at 37-38; *see id*. at 43-51. None of these reports, however, specifically identified deficiencies in Deutsche Bank's internal controls concerning

---

[2] Although the consent order is not incorporated into the original pleadings, the district court granted plaintiffs' motion to take judicial notice of the agreement prior to deciding the instant motion to dismiss. Plaintiffs' proposed amendments to the pleadings also explicitly incorporate the consent order's findings.

6

money laundering. The plaintiffs instead assert, without explanation, that "[t]hese and other deficiencies contributed to significant [anti-money laundering] violations." *Id.* at 38; *see id.* at 43, 45.

Plaintiffs alternatively rely on an agreement, entered into on October 11, 2005, among Deutsche Bank, the Federal Reserve, and the New York State Banking Department, whereby Deutsche Bank agreed, *inter alia*, to improve the bank's anti-money laundering controls and compliance within 60 days. Nonetheless, there is no indication in the record that Deutsche Bank failed to follow through with its obligations pursuant to that agreement.

The remainder of the pleadings recite a litany of publicly disclosed fines and enforcement actions levied against Deutsche Bank in 2015 for failing to implement appropriate anti-money laundering controls. Plaintiffs fail to establish, however, that any of the individual defendants were aware of these deficiencies at the time of their alleged misrepresentations, or that the deficiencies were "so obvious" that the individual defendants "must have been aware" of them. *S. Cherry St.*, 573 F.3d at 109. Indeed, as plaintiffs themselves admit, several of the individual defendants "were at the apex of Deutsche Bank's corporate hierarchy," Pls.' Br. 53, and therefore were several layers removed from the illegal trading activities.

We have considered all of plaintiffs' arguments on this appeal and find in them no basis for reversal. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

7