IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 15, 2019 Session

## NENA PROFFITT VALENTINE v. FRED HOLT ET AL.

Appeal from the Chancery Court for Cocke County
No. 2017CV-9      Robert E. Lee Davies, Senior Judge

_____

### No. E2019-00186-COA-R3-CV

_____

The original plaintiff filed this action to set aside a quitclaim deed and died while the case was still pending. When no motion for substitution of party was filed within 90 days of the original plaintiff's death being suggested on the record, the defendants filed a motion to dismiss. The original plaintiff's son filed a response and requested that he be substituted as the plaintiff. Finding excusable neglect, the trial court denied the motion to dismiss and allowed the original plaintiff's son to be substituted as the plaintiff. The trial court determined that the quitclaim deed was valid and conveyed to the defendants four tracts of land but did not convey a fifth tract due to an inadequate description of the property. The defendants appealed the trial court's decision. We affirm the trial court's denial of the motion to dismiss, but we vacate the trial court's decision regarding the adequacy of the property description and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part, and Remanded

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

Fred Holt, Cosby, Tennessee, pro se.

Clinton Roberts Anderson, Morristown, Tennessee, for the appellant, Vicki Holt.

William McMahan Leibrock, Newport, Tennessee, for appellee, Alex Janeway.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves a quitclaim deed dated February 5, 2010. According to the deed, James Hart Valentine, Sr., and his wife, Nina Proffitt Valentine, conveyed their one-third interest in three tracts of land (referred to as Tracts 1, 2, and 3) and their entire interest in a fourth tract (referred to as Tract 4) to their daughter and son-in-law, Vicki and Fred Holt. The Holts had previously purchased a two-thirds interest in Tracts 1, 2, and 3. The deed included a detailed description of each of the four tracts of land. Below these descriptions, the deed included the following provision:

> It is the intention of the grantors to convey by this deed all of the fee simple interest they have in and to any of the Creed Proffitt and Pearl Proffitt real estate located in Cocke County, Tennessee.[1]

The Holts believed that, by this provision, the deed also conveyed to them real property in Cocke County known as Polly Place.

Mrs. Valentine died testate in February 2013, bequeathing her entire estate to Mr. Valentine. When Mr. Valentine died testate in June 2014, the entire Valentine estate passed to Mrs. Holt's sister, Nena Valentine. Following Mr. Valentine's death, Nena learned of the 2010 quitclaim deed and filed a complaint against the Holts on January 17, 2017, alleging that the deed conveyed nothing because it was obtained through fraud and misrepresentation. On October 18, 2017, while her case was still pending, Nena died. The Holts filed a notice of Nena's death in the trial court on November 13, 2017, and served a copy of the notice on Nena's attorney. Neither Nena's estate nor a personal representative of the estate filed a motion for substitution within ninety days of the filing of the notice of death. Thus, on February 26, 2018, the Holts filed a motion to dismiss the action in accordance with Tenn. R. Civ. P. 25.01. Nena's son, Alex Janeway, filed a response to the motion to dismiss on April 2, 2018, asserting that a timely motion for substitution was not filed due to excusable neglect and requesting that he be substituted as the plaintiff. After finding that the failure to file a timely motion for substitution was the result of excusable neglect, the trial court granted Mr. Janeway's motion for substitution and denied the Holts' motion to dismiss.

The trial court held a hearing on the merits of the matter on October 3, 2018. In an order entered on October 17, 2018, the court concluded that the 2010 deed was valid and conveyed tracts 1 through 4 to the Holts. The court determined that the deed did not

---

[1] Mrs. Valentine was the daughter of Creed and Pearl Proffitt. When Mr. Proffitt died testate in October 1985, his will provided that his entire estate passed to Mrs. Proffitt. Upon Mrs. Proffitt's death in October 1986, the entire Proffitt estate passed to Mrs. Valentine.

convey Polly Place, however, because the deed did not contain a legal description of the property "or make any reference whatsoever to this particular piece of property."  The Holts filed a motion to alter or amend the judgment that the trial court denied.  The Holts have appealed.

On appeal, the Holts raise several issues which we consolidate and restate as follows:  whether the trial court erred in denying the Holts' motion to dismiss pursuant to Tenn. R. Civ. P. 25.01, and whether the trial court erred in concluding that the 2010 deed did not convey Polly Place because it did not contain an adequate description of the property.

ANALYSIS

As a preliminary matter, we note that the Holts filed separate appellate briefs.  Mrs. Holt is represented by an attorney, but Mr. Holt is a pro se litigant.  This court has stated the following principles about pro se litigants:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts.  The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system.  However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary.  Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (citations omitted); *see also Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct App. 2003).  Additionally, we allow pro se litigants some latitude in preparing their briefs and endeavor to "give effect to the substance, rather than the form or terminology," of their court filings.  *Young*, 130 S.W.3d at 63.  With these principles in mind, we will now address the issues raised by the Holts.

I.  <u>Tenn. R. Civ. P. 25.01</u>.

The first issue the Holts raise concerns whether the trial court erred in denying their motion to dismiss the action.  The Holts contend that the action should have been dismissed because Mr. Janeway failed to make a motion for substitution of parties within the time prescribed by the rules.  Tennessee Rule of Civil Procedure 25.01(1) governs the procedure for substitution after a party's death and provides as follows:

> If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties.  The motion for substitution may be

made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of process. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

Thus, Rule 25.01 expressly states that an action should be dismissed if a motion for substitution of parties is not made within 90 days of a party's death being suggested upon the record. In the event the failure to make a motion for substitution is due to excusable neglect, however, the Tennessee Supreme Court has held that a trial court may extend the ninety-day time period pursuant to Tenn. R. Civ. P. 6.02. *Douglas v. Estate of Robertson*, 876 S.W.2d 95, 97-98 (Tenn. 1994); *see also Dubis v. Loyd*, 540 S.W.3d 4, 9 (Tenn. Ct. App. 2016). Rule 6.02 provides, in pertinent part:

> When by statute or by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion, (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done, where the failure to act was the result of excusable neglect . . . .

TENN. R. CIV. P. 6.02. The party seeking an enlargement of time after the original time has expired must "show that its failure was due to excusable neglect and that the opposing party has not been prejudiced." *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 550 (Tenn. 2006).

Our Supreme Court has adopted the following definition of excusable neglect established by the United States Supreme Court:

> [A] party's failure to meet a deadline may have causes ranging from forces beyond its control to forces within its control. . . . The former will almost always substantiate a claim of excusable neglect; the latter will not. However, neglect extends to more than just acts beyond a party's control and intentional acts. It encompasses "simple, faultless omissions to act and, more commonly, omissions caused by carelessness."

*Id.* at 550-51 (quoting *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Grp.*, 56 S.W.3d 557, 567 (Tenn. Ct. App. 2001) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)). Courts should consider the

following factors when determining whether a failure to meet a deadline was the result of excusable neglect: "(1) the risk of prejudice to parties opposing the late filing, (2) the delay and its potential impact on proceedings, (3) the reasons why the filings were late and whether the reasons were within the filer's reasonable control, and (4) the good or bad faith of the filer." *Id.* at 551 (citing *Pioneer Inv. Servs. Co.*, 507 U.S. at 395).

A trial court is "afforded broad judicial discretion in procedural matters in order to expedite litigation and to preserve fundamental rights of the parties." *Douglas*, 876 S.W.2d at 97. Thus, we review a trial court's decision to grant or deny an enlargement of time pursuant to Rule 6.02 under an abuse of discretion standard. *Dubis*, 540 S.W.3d at 12 (citing *Williams*, 193 S.W.3d at 551). An abuse of discretion occurs when a trial court "'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Under the abuse of discretion standard, we may not substitute our judgment for that of the trial court. *Id.* An appellate court will not reverse a trial court's discretionary decision "'so long as reasonable minds can disagree as to propriety of the decision made.'" *Id.* (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

In the present case, the trial court found that Mr. Janeway sufficiently demonstrated excusable neglect to justify an enlargement of the ninety-day time period under Rule 6.02 for the following reasons: (1) because there was a delay in the issuance of Nena's death certificate, which caused a delay in Mr. Janeway being appointed executor of her estate, and (2) because the original trial judge recused himself and a new judge was not appointed to hear the case until March 2018. Although not expressly articulated, it appears from this rationale that the trial court considered the following factors in making its determination: "(2) the delay and its potential impact on proceedings" and "(3) the reasons why the filings were late and whether the reasons were within the filer's reasonable control." *See Williams*, 193 S.W.3d at 551 (citing *Pioneer*, 507 U.S. at 395). The other two factors a court is required to consider, however, were not referenced or considered by the trial court in its order. We have previously held that "without an appropriate rationale for the trial court's ruling, often 'we are unable to afford appropriate deference to the trial court's decision.'" *Dubis*, 540 S.W.3d at 12 (quoting *In re Noah J.*, No. W2014-01778-COA-R3-JV, 2015 WL 1332665, at *5 (Tenn. Ct. App. Mar. 23, 2015)). Therefore, we will independently review the required factors to determine if Mr. Janeway demonstrated excusable neglect.

The parties focus on factor (3). A trial court's grant of relief from a filing deadline under Rule 6.02 has been described as ""repair work when lawyers have good reasons.'" *Kenyon v. Handal*, 122 S.W.3d 743, 757 (Tenn. Ct. App. 2003) (quoting *Day v. N. Ind. Pub. Serv. Corp.*, 164 F.3d 382, 384 (7th Cir. 1999)). We have held that:

- 5 -

[T]he party's reason for failing to meet the deadline may be the single most important of the four factors and that the trial court should examine the proffered reason to determine "(1) whether the circumstances involved were under a party's control . . . and (2) whether the party was paying appropriate attention to the matter in light of the surrounding circumstances."

*Id.* at 756-57 (quoting *Sizemore*, 56 S.W.3d at 569-70); *see also Dubis*, 540 S.W.3d at 13. In support of his argument for an enlargement of time, Mr. Janeway asserted that he failed to make a motion for substitution within the ninety-day time period because "there was over a month's delay in the issuance of his mother's death certificate" and "there were procedural matters that had to be addressed before [he] could be appointed Executor of his mother's estate." It is clear that these circumstances were not under Mr. Janeway's control. Moreover, nothing in this case suggests that his failure to timely move for substitution was either willful or egregious. *Cf. McBride v. Webb*, No. M2006-01631-COA-R3-CV, 2007 WL 2790681, at *3 (Tenn. Ct. App. Sept. 25, 2007) (holding that a default judgment should not be set aside for excusable neglect when a party fails to act for "'strategic decisions'" that are "'egregious and not satisfactorily explained'") (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)). This factor favors Mr. Janeway.

The remaining factors also favor a finding of excusable neglect. First, the Holts admitted at oral argument that they were not prejudiced by the substitution of Mr. Janeway as the plaintiff beyond the ninety-day period prescribed in Rule 25.01. Second, the delay had little to no effect on this litigation because the original trial judge entered an order of recusal on June 21, 2017, and a replacement judge had yet to be appointed to the case when the Holts filed the notice of Nena's death on November 13, 2017. In fact, another judge was not appointed until March 15, 2018; until that time, the case was on hold. Finally, the Holts made no allegation that Mr. Janeway or his counsel acted in bad faith regarding these proceedings. We, therefore, conclude that the trial court did not abuse its discretion in denying the Holts' motion to dismiss pursuant to Rule 25.01 and in granting Mr. Janeway's late-filed motion for substitution on the basis of excusable neglect.

II. Polly Place.

The Holts next argue that the trial court erred in concluding that the 2010 deed did not convey Polly Place because the deed lacked an adequate description of the property. The court explained its decision as follows: "[T]he language in the subject deed could apply with equal exactness to any one of an indefinite number of tracts located in Cocke County, Tennessee. The Court finds that the description used in the subject deed is too vague and uncertain to be enforced." The Holts contend that the deed did, in fact, contain a sufficient description of the property. The provision of the deed the Holts rely on states: "It is the intention of the grantors to convey by this deed all of the fee simple

interest they have in and to any of the Creed Proffitt and Pearl Proffitt real estate located in Cocke County, Tennessee." Mr. Janeway responds that, because this language in the deed does not designate Polly Place with reasonable certainty, the trial court properly concluded that the 2010 deed did not convey the property.

Under Tennessee law, an instrument conveying an interest in property must include a description of the property. *See* Tenn. Code Ann. § 66-5-103. Generally, if an instrument describes the property to be conveyed "'in such manner that it can be located and distinguished from other property, it is good.'" *Manning v. Snyder*, No. E2008-00183-COA-R3-CV, 2009 WL 792821, at *5 (Tenn. Ct. App. Mar. 26, 2009) (quoting *Wallace v. McPherson*, 214 S.W.2d 50, 53 (Tenn. 1947)). Our Supreme Court has held that "'[t]he test is said to be whether a surveyor with the deed before him and with or without the aid of extrinsic evidence can locate the land and establish the boundaries.'" *Wallace*, 214 S.W.2d at 53 (quoting 16 AM. JUR. *Deeds*, § 263, p. 586).

To support their contention that the 2010 deed provides an adequate description of Polly Place, the Holts rely on *Brummit v. Brown*, 21 S.W.2d 626 (Tenn. 1929). In *Brummit*, the Tennessee Supreme Court considered whether a deed was void under the statute of frauds because it failed to include an adequate description of the subject property. *Brummit*, 21 S.W.2d at 627. The *Brummit* Court determined that the following description was adequate: "All my undivided interest in the estate of my father, Frank A. Brown, of Hamblen County, Tennessee, who was deceased on the 7th day of March, 1928." *Id.* The Court explained:

> [I]t seems to be well settled . . . that a deed or mortgage describing the subjectmatters [sic] as all of the grantor's property, or all of his property in a certain locality, is not void for want of sufficient description. These holdings seem to rest upon the theory that the description can be made certain by reference to the deeds of record conveying the lands.

*Id.* at 628.

Similarly, in *Manning v. Snyder*, this court considered whether the following description was adequate to transfer a decedent's property interest into a trust: "The purpose of the Quit Claim Deed is to release any and all interest the Grantor has in real property located in Polk County, Tennessee." *Manning*, 2009 WL 792821, at *5. We applied the holding in *Brummit* and concluded that the description of the property "was legally sufficient to transfer the Decedent's interest and the deed is not void under the statute of frauds." *Id.*

The United States Bankruptcy Court for the Middle District of Tennessee considered whether the *Brummit* holding applied in *In re Tennessee Gas Transport, Inc.*, 169 B.R. 643 (M.D. Tenn. 1994). In *In re Tennessee Gas Transport, Inc.*, the court

considered whether the property descriptions in two deeds of trust were adequate to transfer a debtor's interest in certain property. *In re Tenn. Gas Transp., Inc.*, 169 B.R. at 644. Both deeds of trust provided the following property description:

1. All of Debtor's interest . . . in and to all gathering systems, pipeline systems, processing plants, buildings and other improvements . . . located on or in . . . the lands covered by the properties described in subsections 2, 3 and 4 below or otherwise located in Overton and Putnam Counties, Tennessee (hereinafter collectively called the Gathering Systems), and all materials, equipment, fixtures and other property now or hereafter located on such lands or installed in . . . the Gathering Systems . . ., and all of Debtor's interest in all easements, servitudes, rights-of-way, surface leases, fee tracts and other surface rights . . ., and all permits, licenses, orders, franchises, certificates, similar authorizations and related instruments and rights which are now or hereafter used . . . in connection with the ownership or operations of the Gathering Systems;

2. The easements, rights-of-way, surface leases, servitudes, fee tracts, permits and related instruments . . . described in Exhibit B attached hereto . . . or described in any instrument or document described in Exhibit B . . . together with all other similar interests owned by Debtor and used in connection with the Gathering System[s] (but not including any right, title or interest in any oil and gas leasehold estate owned by Debtor);

3. Without limitation of the foregoing, all other right, title and interest of Debtor . . . in and to the lands which are described in Exhibits A, A–1, and B hereto . . .;

4. All of Debtor's interest in and rights under . . . all presently existing and hereafter created gas purchase agreements, gas sales agreements, product sales agreements, processing agreements, exchange agreements, transportation agreements and other contracts and agreements which . . . relate to the transportation and/or processing of gas through or in the Gathering Systems . . . and all other contracts and agreements . . . which . . . relate to the properties described in subsections 1, 2 and 3 above or the Gathering Systems . . .;

5. All permits, licenses, franchises, orders, certificates, similar authorizations, and other rights and privileges now held or hereafter obtained in connection with the Gathering System[s];

6. All of the rights, privileges, benefits, hereditaments and appurtenances in any way belonging, incidental or appertaining to any of the property described under 1 through 6 above; and [ ]

7. All of the proceeds and products of the property described under 1 through 7 above . . . .

*Id.* at 645-46. Citing to *Brummit*, the defendants argued that the property description was adequate "because it convey[ed] all the debtor's interest in the property." *Id.* at 646. The court rejected the defendants' argument and concluded that the property description at issue was distinguishable from *Brummit* because it did not convey all of the debtor's property. *Id.* Rather, the property description conveyed all of the debtor's interest in certain personal property, *i.e.* Gathering Systems, and expressly excluded the debtor's oil and gas leasehold interests connected to the property. *Id.* The court found that "[t]he careful delineation . . . of specific types of real and personal property interests connected to certain tracts of land is clearly distinguishable from" the general conveyance in *Brummit. Id.*

In the present case, the 2010 deed referred to "all of the fee simple interest [Mr. and Mrs. Valentine] have in and to any of the Creed Proffitt and Pearl Profitt real estate located in Cocke, County, Tennessee." Unlike in *In re Tennessee Gas Transport, Inc.*, this property description neither specifically excludes certain of the grantors' interests nor delineates between specific types of real and personal property interests connected to the subject property. Instead, the property description is a general conveyance like those found to be sufficient in *Brummit* and *Manning*. The description clearly shows that the grantors intended to convey certain tracts. Thus, we conclude that the trial court erred in finding that the property description at issue was inadequate. We are unable, however, to determine from the record before us whether the property description in the deed included Polly Place, not due to uncertainty created by the description, but rather, due to factual uncertainty created by the evidence introduced at trial about which the trial court did not make any factual findings.

As mentioned above, the property description conveyed all of the fee simple interest Mr. and Mrs. Valentine had "in and to any of the Creed Proffitt and Pearl Proffitt real estate located in Cocke County, Tennessee." Mr. Janeway testified that any fee simple interest the Valentines had in any of the Creed and Pearl Proffitt real property was the result of a specific bequest in Creed Proffitt's will that devised forty-eight acres to Mrs. Valentine. According to Mr. Janeway, those forty-eight acres constituted the four tracts of land identified in the 2010 deed as tracts 1 through 4. Mr. Janeway stated that Polly Place was not included in the forty-eight acre devise. Thus, he believed that Creed Proffitt's will did not devise any interest in Polly Place to Mrs. Valentine.

It may be true that the forty-eight acre devise did not include Polly Place, but the will of Creed Proffitt also included the following bequest: "All the rest, residue and remainder of my estate, I will, devise, and bequeath to my wife, Pearl Freeman Proffitt, in fee simple and absolute estate." If Polly Place was a part of the Creed Proffitt estate, this bequest would have devised it to Mrs. Proffitt. Mrs. Valentine, Pearl Proffitt's heir, would have then inherited Polly Place when Mrs. Proffitt died intestate. The parties presented conflicting testimony regarding whether Polly Place was a part of the Creed Proffitt estate. Mr. Holt testified that Polly Place was included in the Creed Proffitt

estate, whereas Mr. Janeway testified that it was not. Furthermore, during direct examination, Mr. Janeway referenced a letter written by Mr. Holt in which Mr. Holt stated that he believed he was "going to get the back forty" acres. Mr. Janeway then introduced into evidence a deed he referred to as "the back forty deed," which he implied included Polly Place. This deed was registered in 1993 and conveyed land in Cocke County, Tennessee from Gary and Lori Webb to Mr. and Mrs. Valentine. The trial court made no determination regarding whether Polly Place was included in the Creed Proffitt estate or excluded from it because it was included in "the back forty deed."

In light of the foregoing, we are unable to determine whether the 2010 deed conveyed Polly Place to the Holts. We, therefore, remand the case to the trial court for a determination of whether Polly Place was included in the Creed Proffitt estate. If the trial court determines that Polly Place was, in fact, included in the Creed Proffitt estate, the property description was adequate to convey Polly Place to the Holts.

CONCLUSION

The judgment of the trial court denying the Holts' motion to dismiss the action due to Mr. Janeway's failure to make a timely request for substitution is affirmed. The judgment of the trial court concluding that the 2010 deed did not contain an adequate description of Polly Place to convey the property to the Holts is vacated and the matter is remanded for a determination of whether the Creed Proffitt estate included Polly Place. Costs of appeal are assessed equally against the appellants, Fred and Vicki Holt, and the appellee, Alex Janeway, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE